# NORTHWESTERN NATIONAL LIFE INSURANCE COM-PANY *v.* RIGGS.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 34.   Argued October 18, 1906.—Decided December 3, 1906.

The provisions of §§ 7890, 7891, Revised Statutes of Missouri, which as construed by the highest court of that State cut off any defense by a life insurance company based upon false and fraudulent statements in the application, unless the matter represented actually contributed to the death of the insured, and which apply alike to domestic and foreign corporations, is not repugnant to the Fourteenth Amendment, and does not deprive a foreign corporation coming into the State of its liberty or property without due process of law, nor deny to it the equal protection of the laws.

The liberty referred to in the Fourteenth Amendment is the liberty of natural, not artificial, persons.

129 Fed. Rep. 207, affirmed.

THE facts are stated in the opinion.

*Mr. Stephen S. Brown,* with whom *Mr. W. A. Kerr* and *Mr. John E. Dolman* were on the brief, for plaintiff in error:

Section 7890, Rev. Stat., Missouri, of 1899, as interpreted to the jury by the trial court, violates § 1 of the Fourteenth Amendment. *Smiley* v. *Kansas,* 196 U. S. 447, 454; *M., K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613, 639; *C., B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 242, 246;   Corporations are persons within the meaning of this amendment. *Smyth* v. *Ames,* 169 U. S. 466, 522; *Santa Clara Co.* v. *So. Pac. R. R. Co.,* 118 U. S. 394, 396; *C. C. & Augusta R. R. Co.* v. *Gibbs,* 142 U. S. 386, 391; *Gulf, Col. & S. F. Ry.* v. *Ellis,* 165 U. S. 150, 154; *St. Louis & S. F. Ry.* v. *Gill,* 156 U. S. 649, 657; *Chicago, M. & St. P. Ry.* v. *Minnesota,* 134 U. S. 418; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 362.

The position of the plaintiff in error is not affected by the fact that it is a foreign insurance company.

The law is not a condition to its doing business in the State.

It is in general terms, and hits all insurance companies. If it is invalid as to some it is invalid as to all. A company lawfully doing business in the State, is no more bound by a general unconstitutional enactment than a citizen of the State. *Carroll* v. *Greenwich Insurance Co.,* 199 U. S. 401, 409.

The right to make contracts is an indispensable incident to property, without which it cannot be lawfully acquired as between living persons nor effectively preserved or used. *Allgeyer* v. *Louisiana,* 165 U. S. 578, 591; *Holden* v. *Hardy,* 169 U. S. 366, 391. The privilege of contracting is both a liberty and a property right. *Frorer* v. *The People,* 141 Illinois, 171, 181; *Barbier* v. *Connolly,* 113 U. S. 27, 31; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 559; *Shaver* v. *Pennsylvania Co.,* 71 Fed. Rep. 931, 939; *State* v. *Julow,* 129 Missouri, 163, 172.

Due process of law, and law of the land, which are synonymous, necessarily refer to a preëxisting rule of conduct, and are intended to secure the individual from the arbitrary exercise of the powers of the Government, unrestrained by the established principles of private rights and distributive justice. These terms were intended to perpetuate old and well established principles of right and justice by securing them from abrogation or violation. *Weimer* v. *Bembury,* 30 Michigan, 201; Cooley's Const. Lim. (6th ed.) 443.

Having these principles in mind it becomes a necessary "conclusion of reason" that a statute that has the effect to enable one to obtain the property of another by fraud, which is even more odious than force, 1 Story Eq. Jurisp., 15th ed., 200, and when the fraud shall have been accomplished, vests the title in the wrongdoer, is obnoxious to that provision of the Constitution which forbids the State to deprive one of his property without due process of law. *Boyd* v. *United States,* 116 U. S. 616; *McKinster* v. *Sager,* 72 N. E. Rep. (Ind.) 815; 1 Bouvier, Law Dict., 690; Broom's Leg. Max., 3d ed., 463, *572; *Merritt* v. *Robinson,* 35 Arkansas, 483; *Riggs* v. *Palmer,* 115 N. Y. 506, 511.

Fraud will vitiate any, even the most solemn transactions; and an asserted title to property, founded upon it is utterly void. *United States* v. *The Amistad,* 15 Pet. 518, 594; *Catts* v. *Phalen,* 2 How. 376, 381; *Cochran* v. *Cummings,* 4 Dall. 250.

And this principle has in no case found or deserved a more uniform application than in case of policies of insurance upon both life and property. *Carrolton Co.* v. *American Co.,* 115 Fed. Rep. 77; *Livingston* v. *Insurance Co.,* 7 Cranch, 506; *Hubbard* v. *Association,* 100 Fed. Rep. 719; *Mattison* v. *Modern Samaritans,* 91 Minnesota, 434; *Kœrts* v. *Grand Lodge,* 119 Wisconsin, 525; *Rupert* v. *Supreme Court U. O. F.* (Minn.), 102 N. W. Rep. 715; *Royal Neighbors* v. *Wallace* (Neb.), 102 N. W. Rep. 1020; *Spencer* v. *Phœnix Ins. Co.,* 119 Wisconsin, 530; *Hanf* v. *Northwestern Assn.,* 76 Wisconsin, 450; *Ketcham* v. *American Assn.,* 117 Michigan, 521; *N. Y. Life Ins. Co.* v. *Fletcher,* 117 U. S. 519.

A contract may be avoided for fraud without reference to whom the fraud may be directed against—whether it be one of the parties, a stranger to the agreement, or the public. It is a matter affecting the public morals and the policy of the State, and one may not even make a valid contract that he will stand bound by fraud. Broom's Max. 668; quoted 14 Am. and Eng. Enc. of Law, 2d ed., 157 n.; *Bridger* v. *Goldsmith,* 143 N. Y. 424; *Hofflin* v. *Moss,* 67 Fed. Rep. 440; *Wilcox* v. *Howell,* 44 N. Y. 398; *Regan* v. *Union Mutual Ins. Co.,* 76 N. E. Rep. 217; *Columbia Ins. Co.* v. *Lawrence,* 10 Pet. 507.

*Mr. Robert A. Hewitt, Jr.,* and *Mr. W. H. Haynes,* with whom *Mr. Kendall B. Randolph* and *Mr. W. M. Fitch* were on the brief, for defendants in error:

A foreign corporation is not a citizen within the meaning of the Fourteenth Amendment, and the States have a right to impose whatever conditions they see fit to impose upon foreign corporations doing business in the State. *Cable* v. *U. S. Life Ins. Co.,* 191 U. S. 288; *Blake* v. *McClung,* 172 U. S.

239; *Orient Ins. Co. v. Daggs,* 172 U. S. 557; *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 28; *New York Life Ins. Co. v. Craven,* 178 U. S. 389; *Hancock Mut. Life Ins. Co. v. Warren,* 181 U. S. 73.

The law, however, applies to all persons in like circumstances and conditions, and all insurance companies whether foreign or domestic. *Hibben v. Smith,* 191 U. S. 325.

The Fourteenth Amendment, it has been held, legitimately operates to extend to the citizens and residents of the States the same protection against arbitrary state legislation, affecting life, liberty and property, as is afforded by the Fifth. Federal courts ought not to interfere when what is complained of amounts to the enforcement of the laws of a State applicable to all persons in like circumstances and conditions, nor will they interfere unless there is some abuse of law amounting to confiscation of property or a deprivation of personal rights. *French v. Barber Asphalt Paving Co.,* 181 U. S. 324; *Mo. Pac. Ry. Co. v. Humes,* 115 U. S. 512; *Mo. Pac. Ry. Co. v. Mackey,* 127 U. S. 205; *Railway v. Herrick,* 127 U. S. 210.

United States courts are controlled as to the interpretation of state statutes by the decision of the court of last resort of the State and will form an independent judgment as to their meaning only when no such construction has been had. *Enfield v. Jordan,* 119 U. S. 680; *Bank v. Pennsylvania,* 167 U. S. 461; *Hartford Ins. Co. v. Railroad Co.,* 175 U. S. 91; *McCain v. Des Moines,* 174 U. S. 177; *Orr v. Guilman,* 183 U. S. 283; *Sioux City R. R. Co. v. N. A. Trust Co.,* 173 U. S. 107.

A foreign insurance company doing business in a State is governed by the laws thereof, as to the interpretation of its contract. Those laws become a part of the contract. *Fletcher v. New York Life Ins. Co.,* 13 Fed. Rep. 526; *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519; *John Hancock Mut. Life Ins. Co. v. Warren,* 181 U. S. 73; *Equitable Life Assur. Society v. Pettus,* 140 U. S. 233, 234; *New York Life Ins. Co. v. Cravens,* 178 U. S. 389; *Orient Ins. Co. v. Daggs,* 172 U. S. 557.

This statute has been interpreted by the courts of last resort of Missouri and given the meaning placed upon it by the trial judge in his charge to the jury. *Schuermann* v. *Insurance Co.*, 165 Missouri, 641; *Kern* v. *Legion of Honor*, 167 Missouri, 471; *Jenkins* v. *Covenant Life Ins. Co.*, 171 Missouri, 375; *Smith* v. *Mut. Ben. Life Ins. Co.*, 173 Missouri, 329; *Herzberg* v. *Brotherhood*, 110 Missouri App. 328.

MR. JUSTICE HARLAN delivered the opinion of the court.

This was an action upon two policies of insurance issued by the Northwestern National Life Insurance Company, a Minnesota corporation doing business in Missouri, upon the life of Eber B. Roloson; one dated November 21, 1901, the other May 14, 1902; each for the sum of $5,000, payable to the estate of the insured within ninety days after the acceptance by the company of satisfactory evidence of his death while the policy was in full force.

Each policy contained these provisions: "This policy shall not be in force until the first premium is paid, and the policy delivered to and accepted by the insured while in good health. At any time when this policy has been two years continuously in force it will be incontestable, except for fraud and nonpayment of premiums as provided herein, if the age of the insured has been correctly stated in the application."

The application for insurance was made by reference a part of the policy, the latter providing that the statements and answers therein every person accepting or acquiring an interest in the policy "adopts as his own, and warrants to be full, complete and true, and agrees to be material." The application provides: "No obligation shall arise under this application until the usual policy of insurance shall be issued and delivered to me, I being at that time in good health, and the first premium paid by me;" also, "I warrant the statements and answers as written or printed herein, or in part two of this application, to be full, complete and true, whether written

by my own hand or not, and agree that.every such statement and answer is material to the risk;" also, "That I am not afflicted with any disease or disorder; nor have I had any illness, local disease, or personal injury not herein set forth."

Among the questions propounded to the insured and his answers—embodied in the application—were the following: "Q. Has any company or association ever postponed or declined to grant insurance on your life? A. No. Q. If so, for what reason and by what company or association. A. No. Q. Has any physician ever given an unfavorable opinion upon your life with reference to life insurance or otherwise? A. No. Q. Have you ever had any illness, local disease, injury, mental or nervous disease or infirmity, or ever had any disease, weakness, or ailment of the head, throat, lungs, heart, stomach, intestines, liver, kidneys, bladder, or any disease or infirmity whatever? A. No. Q. Give name and address of each physician who has prescribed for or attended you within the past ten years, and for what disease and ailments? Name, Dr. C. O. Patton, McFall, Mo. (b). For what disease or ailment? A. Bilious attack. Q.. Has your husband or wife or any other immediate member of your family any tuberculous disease? A. Only sister had as stated."

It was admitted .at the trial that the insured died February 28, 1903, having paid all premiums due upon his policies, and that proofs of his death were made, such proofs stating that he died of progressive anæmia.

The company denied all liability on its policies, upon the ground that each of the answers to the above questions was untrue, and known to be so by the applicant when he made them. And at the trial it was offered to be proved (and the offer was rejected, the company duly excepting) that such answers were not true, and when made were known to be untrue.

There was a verdict for the plaintiffs, the executors of the insured, for the amount due on the two policies, namely,

$11,050, for which judgment was rendered against the company.

The case was brought here under the act of March 3, 1891, c. 517, which authorizes an appeal or writ of error directly to this court from a Circuit or District Court of the United States, in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States. 26 Stat. 826, 828.

When the policies in question were issued, it was provided by the statutes of Missouri, § 7890, that: "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case, shall be a question for the jury;" and by § 7891, that "in suits brought upon life policies, heretofore or hereafter issued, no defense based upon misrepresentation in obtaining or securing the same shall be valid, unless the defendant shall, at or before the trial, deposit in court for the benefit of the plaintiffs, the premiums received on such policies."

These provisions were first enacted in 1874, appearing in the Revision of 1879 as secs. 5976 and 5977, in the Revision of 1889 as secs. 5849 and 7891, and in the present revision as secs. 7890 and 7891.

At the trial in the Circuit Court the insurance company made several requests for instructions. They embodied these propositions: That the statute of Missouri, section 7890, was not applicable to this case, and could not be applied to it consistently with the Fourteenth Amendment of the Constitution of the United States; that the plaintiff could not recover on either policy if it appeared that it was not delivered to and accepted by him while he was in good health; that if the insured, at the time of making his application for a policy of insurance, knowingly, falsely and fraudulently, with the pur-

pose to mislead and deceive the company, misrepresented in the application any matter concerning his health, life or physical condition, which would reasonably affect the action of the company, then the Missouri statute was not applicable to the case; that if with the intention to deceive and mislead the company the insured made in his application an untrue warranty or misrepresentation concerning anything material to the risk, or if at the time of the application he was in bad health, and knew such to be his condition, but fraudulently and falsely, with the intent to deceive, stated that he was then and had been for twelve months in good health, free from all ailments, diseases, weaknesses and infirmities, whereby the company was deceived into issuing the policy, when it would not otherwise have done so, he could not recover in this action.

The trial court refused each request of the company, and an exception to its action was duly taken; and it charged the jury (the company excepting) that the Missouri statute was applicable to this case and not unconstitutional, and that the defendant company could not avoid liability on its policy, by reason of any representations by the insured in his application, unless the jury found that the matters to which such representations had reference *actually contributed to the contingency or event on which the policy, by its terms, was to become due and payable.*

Although the assignments of error are numerous we do not deem it necessary to notice any questions except those growing out of the application of the Missouri statute to this case.

As to the purpose and scope of that statute we need only refer to the decisions of the highest court of Missouri whose province it is to declare its meaning and effect, while it is the province of this court to adjudge whether the statute, as interpreted, is in conflict with the Constitution of the United States. We do not stop to inquire whether, having due regard to its words, the statute might not have been differently construed by the state court, but accept its judgment as indicating what it is to be taken to mean. In *Schuermann* v.

*Union Central Life Ins. Co.*, 165 Missouri, 641, 653, reference was made to the history of business of life insurance in Missouri, the court saying: "While equality of rights and privileges should be the general aim of all laws, and special restrictions and burdens imposed its strict exception, yet laws have ever been enacted by the State, and sustained, since the adoption of our present Constitution, as before its adoption, which were made to operate against certain classes of the community only, when that class has occupied some peculiar position, or when it has been clothed with some peculiar opportunities not enjoyed by the remainder of the community. As said before, life insurance companies in this State, prior to the adoption of sec. 7890, could, and by a practice almost universal, did, insert in their policies a stipulation to the effect that any untrue statement or answer made by the applicant for insurance (regardless of its materiality or regardless of the intent of the applicant in making same) should avoid the policy, and too frequently when demands were made upon them for the obligations of the policies the companies availed themselves of these harsh provisions without a return by them of the money which they had obtained from the insured in his lifetime, and when the untrue statements made had little if any effect upon the risk undertaken by the insurer. This doctrine of warranties, in the extent to which it had grown and was applied, was something peculiar to insurance companies, and was therefore thought the subject of special legislation, in a law which properly undertook to affect insurance companies alone in that particular. By a long and hurtful practice of a given policy peculiarly their own, insurance companies had stamped themselves as a class, to which alone legislation might properly address itself, in that regard."

In the subsequent case of *Kern* v. *Legion of Honor*, 167 Missouri, 471, 487, the court, referring to the statute, said that it "was enacted to correct the evil that had grown up, of permitting insurance companies to make every statement or answer a warranty, and if any one, however trivial or however

foreign to the risk or loss, turned out to be untrue, to avoid the policy without refunding the benefits the company had received. The statute draws no distinction between innocent and fraudulent misrepresentations, and the courts have no right to draw any such distinction. The test applied by the statute is whether 'the matter. misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable,' and the power to determine that question is vested by the statute in the jury, and not in the court." The case of *Christian* v. *Ins. Co.,* 143 Missouri, 460, being called to the attention of the state court, it further said: "In that case no distinction was drawn, or intended to be permitted, between innocent and wilfully fraudulent misrepresentations. The purpose was to give full force and effect to the statute, and to hold that no misrepresentation, whether innocent or fraudulent, when based upon a warranty of truth by the terms of the policy or not, shall be a defense 'unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable.' " See also *Jenkins* v. *Covenant Mut. Life Ins. Co.,* 171 Missouri, 375, 383.

We take it, then, that the statute, if enforced, cuts off any defense by a life insurance company, based upon false and fraudulent statements in the application, unless the matter misrepresented actually contributed to the death of the insured. Is the statute, therefore, to be held repugnant to the Fourteenth Amendment? Does it, in such case, deprive the insurance company of its "liberty" or property without due process of law, or deny to it the equal protection of the laws? Although the statute in some degree restricts the company's power of contracting and is so worded that the beneficiaries of its policy may sometimes reap the fruits of fraud practiced upon it by the insured, we cannot, for that reason, hold that the State may not, so far as the Constitution of the United States is concerned, regulate the business of life insurance to the extent indicated. It is true that this court has said that the liberty

guaranteed by the Fourteenth Amendment against depriva-
tion otherwise than by due process of law embraces the right
to pursue a lawful calling and enter into all contracts proper,
necessary and essential to the carrying out of the purposes
of such calling. . *Allgeyer* v. *Louisiana*, 165 U. S. 578, 589.  It
is true, also, that a corporation of one State, doing business in
another State, under such circumstances as to be directly
subject to its process at the instance of suitors, may invoke
the protection of that clause of the Fourteenth Amendment
which declares that no State shall "deny to any person within
its jurisdiction the equal protection of the laws." *Blake* v.
*McClung*, 172 U. S. 239, 260, 261.  But it is equally the doc-
trine of this court that the power, whether called police,
governmental or legislative, exists in each State, by appro-
priate legislation, not forbidden by its own constitution or by
the Constitution of the United States, to determine for its
people all questions or matters relating to its purely domestic
or internal affairs, and, "to regulate the relative rights and
duties of all persons and corporations within its jurisdiction,
and, therefore, to provide for the public convenience and the
public good." *Lake Shore and Michigan Southern Railway*
v. *Ohio*, 173 U. S. 285, 297, and authorities there cited.

We are informed by the decisions of the Supreme Court of
Missouri that life insurance companies doing business in that
State often secured contracts under which they could defeat
all recovery upon a policy, and retain all premiums paid by
the insured, if it appeared in proof that the application for
insurance contained an inaccurate or untrue statement, how-
ever innocently made, as to matters having no real or substan-
tial connection whatever with the death of the insured, and
which were in no sense material to the risk.  This was deemed
an evil practice to be remedied by legislation.  Of course, the
State, if it had seen proper, might have excepted from the
operation of the statute cases in which the insured, by his
representations when obtaining a policy, perpetrated a fraud
upon the company, or made untrue statements in his applica-

tion as to matters material to the risk. But that remedy was deemed inadequate to prevent wrong and injustice. The State decided to go to the root of the evil, and therefore in substance, it established, as a rule of conduct for all life insurance companies, domestic and foreign, doing business in the State, that representations, of whatever nature, made to the company by the insured should not defeat recovery upon a policy unless such representations, in the judgment of a jury, actually contributed to the contingency or event on which it was to become due and payable. Surely the State could make such a regulation in relation to its own corporations; for a corporation cannot exert any power, nor make any contract, forbidden by the law of its being. Such a restriction as that founded in the Missouri statute, if embodied in the original charter of a life insurance corporation, would, of course, be binding upon it in the State granting such charter, and could not be disregarded. If, however, no such restriction was imposed by its charter, it could yet be imposed by subsequent legislation, unless the State had precluded itself from so doing by some contract (if a binding one could be made) which, as to its obligation, was protected by the Federal Constitution. The business of life insurance is of such a peculiar character, affects so many people, and is so intimately connected with the common good, that the State creating the insurance corporations and giving them authority to engage in that business may, without transcending the limits of legislative power, regulate their affairs, so far, at least, as to prevent them from committing wrong or injustice in the exercise of their corporate functions. The State may well say to its own corporate creatures engaged in the business of life insurance that they shall not refuse to pay what they agreed to pay simply because of some representation made by the insured which did not actually contribute to the contingency or event on which the agreement to pay depended. If a life insurance corporation does not approve such a restriction upon the conduct of its affairs it is its privilege to cease doing busi-

ness. Now, if the statute in question is not invalid as to life insurance corporations of Missouri, it is not perceived that the State may not make its provisions applicable to corporations of other States doing business in its territory with its sanction or under its license. That Missouri could forbid life insurance companies of other States from doing any business whatever within its limits, except upon the terms prescribed by the statute in question, cannot be doubted in view of the decisions of this court. If it could go that far, why may it not declare, as it has in effect done, by this statute, that its provisions shall apply to foreign life insurance companies doing business in Missouri under its license? It would, indeed, be extraordinary if the State could compel its own life insurance companies to respect this statute, but could not enforce its provisions against a foreign corporation doing business within its limits, with its consent, express or implied — especially against one which, as is the case here, came into the State for purposes of business after such statutory provisions were enacted. As the present statute is applicable alike to all life insurance companies doing business in Missouri, after its enactment, there is no reason for saying that it denies the equal protection of the laws. Equally without foundation is the contention that the statute, if enforced, will be inconsistent with the liberty guaranteed by the Fourteenth Amendment. The liberty referred to in that Amendment is the liberty of natural, not artificial persons. Nor in any true, constitutional sense does the Missouri statute deprive life insurance companies doing business in that State of a right of property. This is too plain for discussion.

What has been said disposes of the only questions we need to determine, and the judgment is

*Affirmed.*