IVY v. WESTERN UNION TELEGRAPH CO.

(Circuit Court, E. D. Arkansas, W. D.  November 6, 1908.)

No. 5,424.

1. CONSTITUTIONAL LAW (§ 243*) — EQUAL PROTECTION OF LAWS—CIVIL REMEDIES—LAWS AFFECTING TELEGRAPH COMPANIES.

Act Ark. March 7, 1903 (Acts 1903, p. 123, No. 68), Kirby's Dig. Ark. § 7947, providing that "all telegraph companies doing business in this state shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages," is based upon a reasonable, and not an arbitrary, classification, and is not unconstitutional as depriving telegraph companies of the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702; Dec. Dig. § 243.*]

2. COMMERCE (§ 59*)—REGULATION—METHOD—TELEGRAPHS AND TELEPHONES.

Nor is such statute unconstitutional as an interference with interstate commerce because it applies incidentally to contracts for the transmission of interstate messages.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 87; Dec. Dig. § 59.*

Measure of damages in action against telegraph and telephone companies, see notes to Western Union Telegraph Co. v. Coggin, 15 C. C. A. 235; Western Union Telegraph Co. v. Morris, 28 C. C. A. 59.]

3. STATES (§ 4*)—STATUS UNDER FEDERAL CONSTITUTION—POWER TO ENLARGE CIVIL REMEDIES.

There is nothing in the Constitution of the United States prohibiting a state from changing the common law by permitting the recovery of damages for injuries sustained, for which at common law there could be no recovery.

[Ed. Note.—For other cases, see States, Cent. Dig. § 2; Dec. Dig. § 4.*]

4. CONSTITUTIONAL LAW (§ 130*) — OBLIGATION OF CONTRACTS—FOREIGN CORPORATIONS—SUBJECTION TO LAWS GOVERNING DOMESTIC CORPORATIONS.

Under Const. Ark. art. 12, § 6, which provides that "corporations may be formed under general laws, which laws may from time to time be altered or repealed," and section 11, which provides that foreign corporations may be authorized to do business in the state under such limitations and restrictions as may be prescribed by law, and that "they shall be subject to the same regulations and liabilities as like corporations of the state, and shall exercise no other or greater powers, privileges, or franchises than may be exercised by like corporations of this state," a foreign corporation coming into the state to do business is subject to any change in the laws affecting such business which apply to all like corporations, both foreign and domestic, and such change is not an unconstitutional impairment of any contract between it and the state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 301; Dec. Dig. § 130.*]

5. CORPORATIONS (§ 639*) — FOREIGN CORPORATIONS — SUBJECTION TO STATE LAWS—EFFECT OF ACCEPTANCE OF FEDERAL STATUTE.

The fact that a telegraph company has accepted Act Cong. July 24, 1866, c. 230, 14 Stat. 221 (Rev. St. § 5263 et seq.; U. S. Comp. St. 1901, p. 3579), does not affect its status as a foreign corporation doing business in another state.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 639.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law.   On demurrer to answer.

This is an action to recover damages for a failure to deliver a telegraphic message sent on behalf of the plaintiff Jm Hot Springs, Ark., to a person at Terre Haute, Ind. In addition to the small sum of money claimed as actual damages for expenses incurred in sending the message and other incidentals, the plaintiff seeks to recover $10,000 for mental anguish suffered by reason of the failure to deliver the message, the latter being claimed under the statute of the state of Arkansas approved March 7, 1903 (Acts 1903, p. 123, No. 68), which is as follows:

Kirby's Digest of the Revised Statutes of Arkansas, § 7947. "All telegraph companies doing business in this state shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages; and in all actions under this section the jury may award such damages as they may conclude resulted from the negligence of said telegraph company."

The answer of defendant, among other defenses, pleads in paragraphs 6, 7, 8, 9, and 10 that this act of the General Assembly of the state is unconstitutional. In paragraph 6 the act is attacked upon the ground that it does not distinguish between acts of telegraph companies that are a part of interstate commerce and those that are to be performed wholly within the state, and imposes upon that part of defendant's business which is strictly interstate commerce an oppressive burden. The plea sets up fully the fact that the defendant is engaged in intra as well as inter state commerce, and that the message for whose failure to deliver this action was instituted was an interstate message.

The seventh and eighth paragraphs challenge the constitutionality of the act upon the ground that it is limited strictly to telegraph companies, and for this reason is in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. The ninth paragraph claims that under the laws of the state of Arkansas, as enacted on March 31, 1885 (Acts 1885, p. 176), foreign telegraph companies were permitted to enter the state of Arkansas and do business therein upon certain terms and conditions; That at the time of the enactment of this law the Constitution of the state of Arkansas prescribed that foreign corporations could be permitted to do business in the state on such terms and conditions as the Legislature should prescribe, but that as to contracts made, or business done in this state, they should be subject to the requirements, limitations, and liabilities and entitled to like privileges of corporations of this state; that in pursuance of said invitation expressed by said state the defendant entered the state, expended large sums of money in establishing its business, and has at all times since then complied with the laws of the state until the enactment of the above act of 1903, known as the "Mental Anguish Act," and it is now claimed that the laws in force then constituted a contract with the state, and the enactment of this statute is an impairment of the obligations of this contract, in violation of section 10 of article 1 of the Constitution of the United States.

The tenth paragraph pleads the act of Congress authorizing telegraph companies to erect its line over the post roads in consideration of their agreement to serve the government in the manner prescribed in that act, and it is alleged that prior to the enactment of the mental anguish statute of the state of Arkansas this defendant had complied with the act of Congress, and for that reason the statute is void as against it. The plaintiff demurs to each of these paragraphs.

Whipple & Whipple, for plaintiff.
Rose, Hemingway, Cantrell & Loughborough, for defendant.

TRIEBER, District Judge (after stating the facts as above). The objections raised by paragraphs 7 and 8 are that the act under consideration, because it applied only to telegraph companies and not to other corporations, is class legislation and violative of the provisions of the fourteenth amendment. These objections are clearly

untenable, in view of the numerous decisions of the courts. Whatever doubt might have existed at one time on this question has been removed by a uniform line of decisions of all courts, and especially the Supreme Court of the United States. Cases directly in point are: Atchison, Topeka & Santa Fé Ry. Co. v. Matthews, 174 U. S. 96, 19 Sup. Ct. 69, 43 L. Ed. 909; St. Louis, I. M. & S. R. Co. v. Paul, 173 U. S. 404, 19 Sup. Ct. 419, 43 L. Ed. 746; Fidelity, etc., Association v. Mettler, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922; Farmers' & Merchants' Ins. Co. v. Dobney, 189 U. S. 301, 23 Sup. Ct. 565, 47 L. Ed. 821; Missouri, etc., Ry. Co. v. May, 194 U. S. 267, 24 Sup. Ct. 638, 48 L. Ed. 971; Northwestern Life Ins. Co. v. Riggs, 203 U. S. 243, 27 Sup. Ct. 126, 51 L. Ed. 168; Bachtel v. Wilson, 204 U. S. 36, 27 Sup. Ct. 243, 51 L. Ed. 357; Bacon v. Walker, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499; Ozan Lumber Co. v. Union County Bank, 207 U. S. 251, 28 Sup. Ct. 89, 52 L. Ed. 195; Heath & Milligan Co. v. Worst, 207 U. S. 338, 28 Sup. Ct. 114, 52 L. Ed. 236; Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. Ed. 551; Seaboard Air Line Ry. Co. v. Seegers, 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108; and the following late decisions of the Supreme Court of the state of Arkansas: Union Sawmill Co. v. Felsenthal, 85 Ark. 346, 108 S. W. 217; Arkansas Insurance Company v. McManus, 110 S. W. 797; Ozan Lumber Co. v. Biddie (November 2, 1908), 113 S. W. 796.

In Atchison, Topeka & Santa Fé R. R. Co. v. Matthews, an act of Kansas provided for the recovery of attorney's fees in cases of a recovery against a railroad for a loss sustained by fires caused by the negligence of the railroad company. It was claimed in that case, as it is in the case at bar, that, as the act applied to railroads only, it was class legislation and therefore void. But the court, after a careful consideration of the former adjudications on this subject, in overruling this contention said:

"It is the essence of a classification that upon the class are cast duties and burdens different from those resting on the general public. Thus, when the Legislature imposes on a railroad corporation the double liability for stock killed by passing trains, it says, in effect, that, if suit be brought against a railroad company for stock killed by one of its trains, it must enter into the court under conditions different from those resting on ordinary suitors. If it is beaten in the suit it must pay not only the damages which it has done but twice that amount. If it succeeds it recovers nothing. On the oher hand if it should sue an individual for destruction of its live stock it could under no circumstances recover any more than the value of that stock. So that it may be said that in matter of liability, in case of litigation, it is not placed on an equality with other corporations and individuals: yet this court has unanimously said that this differentiation of liability, this inequality of rights in the courts, is of no significance on the question of constitutionality. Indeed, the very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality." 174 U. S. 106, 19 Sup. Ct. 613, 43 L. Ed. 909.

In the Mettler Case, the validity of a statute making life and health insurance companies (but none others) liable in case of a failure to pay a loss at maturity, in addition to the amount of the loss, of 12 per cent. damages and a reasonable attorney's fee, was questioned. It was claimed that the statute was unconstitutional as being class legislation, but was by the court overruled. The statute was sustained not

only on the ground that it was an amendment to the laws of Texas regulating corporations and permitting foreign companies to do business in the state; but also upon the distinct ground that it was a proper exercise of legislative discretion in classifying such companies. The Chief Justice, who delivered the opinion of the court, on that point said:

"If, however, notwithstanding the acceptance of these conditions, the constitutionality of the particular condition were nevertheless open to question, we must decline to sustain the objection. The reasoning in Railroad Company v. Matthews, 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909, applies rather than that in Railroad Company v. Ellis. The ground for placing life and health insurance companies in a different class from fire, marine, and inland insurance companies is obvious, and we think that putting them in a different class for mutual benefit and relief associations, doing business through lodges, and benevolent associations of the character mentioned in the Texas statute, is not an arbitrary classification, but rests upon sufficient reason." 185 U. S. 326, 22 Sup. Ct. 609, 46 L. Ed. 922.

In the Riggs Case, a statute of Missouri cut off any defense by a life insurance company based upon false and fraudulent representations in the application, unless the matter actually contributed to the death of the insured. This statute was held to be not such class legislation as to be within the prohibition of the fourteenth amendment. Mr. Justice Harlan, who delivered the opinion of the court, said on that point:

"As the present statute is applicable alike to all life insurance companies doing business in Missouri, after its enactment, there is no reason for saying that it denies the equal protection of the laws." 203 U. S. 255, 27 Sup. Ct. 129, 51 L. Ed. 168.

In Bachtel v. Wilson the court on that point say:

"The selection, in order to become obnoxious to the fourteenth amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually so." 204 U. S. 41, 27 Sup. Ct. 245, 51 L. Ed. 357.

In Heath & Milligan Co. v. Worst the court on that subject say:

"We will omit from citation the cases in which this court has passed upon the power of the states to classify objects for the purpose of government. A review of them is not necessary in this case. Counsel have collected and analyzed them, applied and rejected them, as they have thought they supported or opposed their respective contentions. We have declared many times, and illustrated the declaration, that classification must have relation to the purpose of the Legislature. The logical appropriateness of the inclusion or exclusion of objects or persons is not required. The classification may not be merely arbitrary, but necessarily there must be great freedom of discretion, even though it results in 'ill-advised, unequal, and oppressive legislation.'" 207 U. S. 354, 28 Sup. Ct. 119, 52 L. Ed. 236.

In Seaboard Air Line R. R. Co. v. Seegers, a statute of South Carolina, which provided for a penalty of $50 for failure to pay for loss or damage of property while in the possession of a common carrier within a certain time, was attacked upon the same ground, and Mr. Justice Brewer, in overruling this contention, and holding the statute constitutional, said:

"It may be stated as a general rule that an act which puts in one class all engaged in business of a special and public character, requires of them the performance of a duty which they can do better and more quickly than others,

and imposes a duty upon the telegraph company to perform that duty within a reasonable time, cannot be adjudged unreasonable as a purely arbitrary classification. While in this case the penalty may be large, as compared with the value of the shipment, yet it must be remembered that small shipments are the ones which especially need the protection of penal statutes like this. If a large amount is in controversy, the plaintiff can afford to litigate." 207 U. S. 78, 28 Sup. Ct. 30, 52 L. Ed. 108.

In Ozan Lumber Co. v. Union County Bank a statute of Arkansas which exempted dealers from the provisions of an act in relation to notes executed for patented articles was attacked as an unjust and unconstitutional classification, but by the court overruled, the court saying:

"In a classification for governmental purposes, there cannot be an exact exclusion or inclusion of persons and things."

The question, therefore, which controls the constitutionality of this act upon that point is whether the classification is purely arbitrary. Is there no substantial foundation or basis therefor? This must be answered that there is a substantial foundation for the classification. The act applies to all telegraph companies doing business in this state, whether foreign or domestic. The transmission of messages by telegraph differs materially from all others. It enables persons to communicate with others at a very great distance, in a very short time, while communications by mail or other means may take days, even weeks. In cases of serious illness or death, the near relatives may be advised or summoned almost instantly. It is for this reason that persons are willing to pay the high toll, as compared with cost of the mails. It would be impossible for the Legislature to put any other persons or corporations in the same class, except it be telephone companies. The classification is based solely on the nature of the business, which is of a public character, and for this reason is clearly within the rule laid down in the cases hereinbefore cited and many others.

Is the statute unconstitutional for the reason that it is an interference with, and places burdens on, interstate commerce, as claimed in paragraph 6 of the answer? That the language of the statute is broad enough to apply to interstate messages is beyond question, and has been so construed by the Supreme Court of the State. Western Union Telegraph Co. v. Ford, 77 Ark. 531, 92 S. W. 528; Gentle v. Western Union Telegraph Co., 82 Ark. 96, 100 S. W. 742.

This action is based upon a message sent from this state addressed and to be delivered in another state. Is that fatal? That an action for the recovery of actual damages sustained by the sender or addressee of the telegram, by reason of the negligence of the company to transmit or deliver the same after it had, for a valuable consideration, contracted to do so, will lie at common law regardless of the fact whether it is an inter or intra state message, no one will dispute. It is well settled that a contract of affreightment for the carriage of goods from one state or country to another is governed by the laws of the state or country in which it is made.

In Liverpool, etc., v. Phenix Insurance Co., 129 U. S. 453, 9 Sup. Ct. 476, 32 L. Ed. 788, it was said:

"This court has tot heretofore had occasion to consider by what law contracts like those now before us should be expounded. But it has often affirmed, and acted on the general rule that contracts are to be governed, as to their nature, their validity, and their interpretation, by the law of the place where they were made, unless the contracting party clearly appear to have had some other law in view."

And this rule has been applied to contracts for telegraph messages. Reed v. Western Union Telegraph Co., 135 Mo. 661, 37 S. W. 904, 34 L. R. A. 492, 58 Am. St. Rep. 609; Wharton on Confl. of Laws, § 471f. For this reason, were this an action to recover actual damages, or if the statutes of Arkansas only permitted the recovery of such damages, the fact that they applied to inter as well as intra state messages would not affect their validity as an unlawful burden on interstate commerce. Damages for injuries to feelings, or mental anguish unattended by physical injury, could not be recovered at common law, as decided by the Supreme Court of Arkansas in Peay v. Western Union Telegraph Co., 64 Ark. 538, 43 S. W. 965, 39 L. R. A. 463. As in most instances the failure to transmit or deliver a telegraphic message causes only mental suffering, unattended by physical injury, the Legislature of the state has seen proper to change the common-law rule and permit the recovery of such damages. The act attacked is not intended to inflict a penalty, as was the case under the statute of Indiana, involved in Western Union Telegraph Co. v. Pendleton, 122 U. S. 347, 7 Sup. Ct. 1126, 30 L. Ed. 1187, and for that reason that case is not applicable. An earlier statute of this state enacted March 31, 1885, provides for a penalty for a refusal of a telegraph or telephone company to transmit messages. That statute is digested as section 7946, Kirby's Dig. Stat. Ark. The plain object of the act now under consideration is to permit the recovery of damages for the negligent breach of a contract to safely transmit and properly deliver the message, which at common law it had been held by the highest court of the state could not be recovered. The statute now under consideration, in the language of the Supreme Court in St. Louis & San Francisco R. R. Co. v. Mathews—

"is not a penal one, imposing punishment for violation of law, but it is purely remedial, making the party doing a lawful act for its own profit liable in damages to the innocent party injured thereby, and giving to that party the whole damages, measured by the injury suffered." 165 U. S. 1, 27, 17 Sup. Ct. 243, 253, 41 L. Ed. 611.

There is nothing in the fourteenth amendment, nor in any other provision of the Constitution of the United States, prohibiting the state from changing the common law in permitting the recovery of damages for injuries sustained for which at common law none could be recovered. Wilmington Mining Co. v. Fulton, 205 U. S. 60, 74, 27 Sup. Ct. 412, 417, 51 L. Ed. 708. In that case the court said:

"And even although the liability imposed upon the mine owners to respond in damages for the willful failure of the mine manager and mine examiner to comply with the requirements of the statute was not in harmony with the principles of the common law applicable to the relation of master and servant, it being competent for the state to change and modify those principles in accord with its conceptions of public policy, we cannot infer that the selection of mine owners as a class upon which to impose the liability in question was purely arbitrary and without reason."

That the statute incidentally affects interstate transactions does not make it unconstitutional, for it is hard to imagine any law affecting contracts for the carriage of goods or passengers, or telegraphic messages, which may not in some way incidentally have that effect. Among the many decisions sustaining such acts are: Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; Railway Co. v. New York, 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; Chicago, etc., R. R. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688.

Cases sustaining the power of the state to regulate the relation of master and servant by extending the liability of the master to injuries for which he was not liable at common law, although incidentally these acts may affect interstate commerce, are Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819; Missouri Pacific R. R. Co. v. Mackey, 127 U. S. 210, 8 Sup. Ct. 1161, 32 L. Ed. 107; Minneapolis, etc., R. R. Co. v. Herrick, 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109; Chicago, etc., R. R. Co. v. Pontius, 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675; Tullis v. Erie Ry. Co., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192; Peirce v. Van Dusen, 78 Fed. 693, 24 C. C. A. 280, 69 L. R. A. 705; and inferentially the Employer's Liability Cases, 207 U. S. 463, 496, 28 Sup. Ct. 141, 52 L. Ed. 297. And this rule has been applied to telegraph companies. Western Union Tel. Co. v. James, 162 U. S. 650, 661, 16 Sup. Ct. 934, 40 L. Ed. 1105; Gray v. Telegraph Co., 108 Tenn. 17, 64 S. W. 1063, 56 L. R. A. 301, 91 Am. St. Rep. 706.

Did the fact that the telegraph company entered the state and constructed its lines before the enactment of this statute prevent the state from enacting a law changing the liability of such corporations? Is such an act of the state an impairment of the obligation of a contract, and therefore in violation of section 10, article 1, of the national Constitution? Counsel for the defendant did not very earestly insist upon this point, and for this reason the court would probably be justified in treating it as abandoned, but as this is not a court of last resort it is deemed best to dispose of it now. Assuming that when a foreign corporation, by permission of the state, as evidenced by its legislative acts, enters it for the purpose of engaging in business therein, it is such a contract as will be protected by that provision of the Constitution, it must be conceded that the contract would be subject to the Constitution of that state then in force, and if the acts of the legislature are in conflict with the Constitution they are void; therefore, if, as this defendant claims, when it entered this state under the provisions of the act of the Legislature of March 31, 1885 (Acts 1885, p. 176), regulating the admission of foreign telegraph companies into this state, it thereby entered into a contract with the state, then every part of that legislative contract was subject to the Constitution then in force, and if it conflicted therewith it is, to the extent of such conflict, unconstitutional. The Constitution of the state of Arkansas in force since 1874, and still in force, provides:

"Art. 12. § 6. Corporations may be formed under general laws, which laws, may, from time to time, be altered or repealed."

And section 11 of that article:

"Foreign corporations may be authorized to do business in this state under such limitations and restrictions as may be prescribed by law. ＊ ＊ ＊ They shall be subject to the same regulations, limitations and liabilities, as like corporations of this state, and shall exercise no other or greater powers, privileges, or franchises than may be exercised by like corporations of this state."

Therefore, when the defendant came into this state, it did so subject to the same regulations, limitations, and liabilities as domestic corporations, and, as the power to amend the corporation laws was expressly reserved by the state, defendant was subject to such changes as the Legislature might make, provided no greater burdens were placed on foreign corporations than on like corporations created under the laws of the state. That such legislation is discretionary was expressly decided in Fidelity, etc., Co. v. Mettler, supra, and that it may be done under the Constitution of this state was decided by the Supreme Court of Arkansas in Woodson v. State, 69 Ark. 521, 65 S. W. 465, and Ozan Lumber Co. v. Biddie, supra. In the Mettler Case the court said:

"The power of the state in the matter of the imposition of conditions on its own and foreign corporations has been repeatedly recognized by this court."

If the statute in question applied only to foreign corporations, exempting domestic telegraph companies from the liabilities imposed by it, then it would probably come within the principle established in American Smelting Co. v. Colorado, 204 U. S. 103, 27 Sup. Ct. 198, 51 L. Ed. 393.

By referring to the Revised Statutes of this state (Kirby's Digest), it will be noticed that this act is a part of chapter 151, the title of which treats of "Telegraph and Telephone Companies"; the same chapter, of which the act of 1885 pleaded by the defense is a part; the chapter which, in effect, covers all the laws of the state on the subject of the title.

As to the plea set up in the tenth paragraph, that the defendant had complied with the act of Congress of July 24, 1866, c. 230, 14 Stat. 221 (U. S. Comp. St. 1901, p. 3579) relating to telegraph companies, it is deemed sufficient to refer to Western Union Telegraph Co. v. Pennsylvania R. R. Co., 195 U. S. 540, 25 Sup. Ct. 133, 49 L. Ed. 312, and 195 U. S. 595, 25 Sup. Ct. 150, 49 L. Ed. 332.

The demurrer to each of the paragraphs in the answer will be sustained.