232 F.Supp. 629 (1964)
D. D. B. REALTY CORPORATION
v.
Perry H. MERRILL, Director of Forests and Parks, and Albert W. Gottlieb, State Forester, Mt. Mansfield Company, Inc.
Civ. A. No. 3614.
United States District Court D. Vermont.
July 29, 1964.
*630 Robert K. Bing, Joseph E. Frank, Burlington, Vt., for plaintiff.
Charles E. Gibson, Jr., Atty. Gen., of Vermont, Montpelier, Vt., for Perry H. Merrill and Albert W. Gottlieb.
Ryan & Ryan, Montpelier, Vt., for Mt. Mansfield Company, Inc.
GIBSON, District Judge.

STATEMENT OF THE CASE
This action arises as a result of a complaint filed on December 10, 1962 by the plaintiff corporation which owns a ski lodge named The Topnotch located in Stowe, Vermont. The original defendants in the action were Perry H. Merrill, Director of Forests and Parks for the State of Vermont and Albert W. Gottlieb, State Forester for the State of Vermont. The jurisdiction of this Court is founded upon the fact that the action arises under the Fourteenth. Amendment to the United States Constitution, Sections One and Five, and also by virtue of 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201, 2202.
The original complaint alleged that the defendants executed a lease on behalf of the State of Vermont to the Mt. Mansfield Company, Inc. of land, buildings and ski lifts located in the vicinity of Mt. Mansfield in the Town of Stowe, Vermont. It then alleged that during the 1960-61 ski season the Mt. Mansfield Company offered greatly reduced prices at the Mt. Mansfield ski area to all skiers for the use of ski lifts and ski school instructions during seven five-day periods. During the 1961-62 and 1962-63 ski seasons it was alleged that these greatly reduced prices for the use of ski lifts and ski school instruction at the Mt. Mansfield area during eight and seven five-day periods respectively were offered to skiers only on the condition that they be guests at ski lodges which are members of the Stowe Area Association, Inc.
The complaint then alleged that the Stowe Area Association, Inc. is a private corporation organized under the laws of Vermont and that the plaintiff is not a member of this corporation. Since it is not a member, guests at the lodge of the plaintiff have been excluded from the five-day reduced rate plan, thus causing the plaintiff to lose business in the past, and if the exclusion of plaintiff's guests continues in the future, plaintiff will continue to lose business. Plaintiff then contends that the action by Mt. Mansfield Company, Inc. in imposing the said condition for obtaining greatly reduced prices is state action by virtue of the terms of the lease; that *631 such state action discriminates against persons such as the plaintiff who do not desire to join the Stowe Area Association, Inc.; that such state action discriminates against lodge owners unable to join the Stowe Area Association due to territorial limitations on membership; that such state action discriminates against Vermont citizens who reside at home; and that such state action discriminates against non-residents who are not guests at a Stowe Area Association, Inc. member-lodge. It finally alleged that such discrimination on the basis of whether or not the skiers are guests at member-lodges is not a reasonable classification for state action and deprives the plaintiff of equal protection of the laws, and that such discrimination deprives the plaintiff of property without due process of law.
As a result of these allegations and contentions, the plaintiff requested a declaratory judgment that discrimination in the rate schedule for ski lifts and ski school instruction at Mt. Mansfield area among skiers on the basis of whether they are guests at member-lodges is unconstitutional state action; further, it seeks a permanent injunction issue ordering immediate cessation of said discrimination along with any other equitable relief that this Court deems just.
The original defendants, Perry H. Merrill and Albert W. Gottlieb, on December 28, 1962 filed a joint answer in which certain affirmative defenses were stated. Among these were the defenses: (1) that this Court does not have jurisdiction over the subject matter since the facts alleged do not constitute state action or that discrimination as alleged is not contrary to the Fourteenth Amendment; (2) that the complaint fails to state a claim upon which relief can be granted since the action in substance is against the sovereign State of Vermont which cannot be sued without its consent; (3) that the plaintiff has failed to join indispensable parties, namely the Mt. Mansfield Company, Inc. and Stowe Area Association, Inc.
On January 2, 1963 plaintiff moved for summary judgment. On January 21, 1963 a hearing was held on the defenses in the defendants' answer and plaintiff's motion for summary judgment at which time the defendants moved that the complaint be dismissed. Decision on the motions was reserved. On February 4, 1963 plaintiff moved to amend his complaint and an order was made allowing such amendment. Defendants then filed further affidavits supporting their position that the Mt. Mansfield Company, Inc. was an indispensable party. An order by this Court was on March 21, 1963 issued which in substance denied defendants' motion to dismiss on the condition that plaintiff further amend his complaint to make Mt. Mansfield Company, Inc. a defendant. On April 4, 1963 an amended complaint was served on the Mt. Mansfield Company, Inc. which in turn filed an answer on April 22, 1963. Along with its answer, the Mt. Mansfield Company, Inc. filed its motion for summary judgment in favor of the defendants. On May 15, 1963 a hearing was held on plaintiff's and defendants' motions for summary judgment and the affirmative defenses of the defendants. As a result of this hearing, plaintiff moved not to pursue its motion for summary judgment at that time and for denial of defendants' motion for summary judgment. This was granted and the case was set for hearing on its merits. On January 4, 1964 a trial by court on the merits commenced and at the termination of this trial on January 6, 1964 all parties were ordered by the Court to submit requests for findings of Court.

FINDINGS OF FACT
After hearing the case on its merits and submission of requests for findings by all parties to the action, I find the following facts:
1. D.D.B. Realty Corporation owns and operates a ski lodge named the Topnotch which is located in the town of Stowe, Vermont. The Topnotch, so-called, includes two buildings on the same *632 parcel of land. These two buildings are called the Topnotch and the Bottomnotch. Bottomnotch accommodates 22 persons and Topnotch, approximately 60 persons. Bottomnotch in the recent past has not been used as a lodge but was rented to Stowe Preparatory School.
2. Perry H. Merrill is Commissioner of Forests and Parks for the State of Vermont.
3. Albert W. Gottlieb is State Forester for the State of Vermont.
4. There are sixty-three state parks and forests in the State of Vermont. It is the policy of the State of Vermont that "the recreational areas in the Vermont State Parks and Forests are maintained for the convenience and enjoyment of the public" and "their use is subject to a few simple rules and regulations established for the protection of the grounds and to ensure the equal opportunity of all to enjoy them peacefully." The Rules and Regulations of the Department of Forests and Parks of the State of Vermont do not discriminate in charges imposed on visitors to state parks and forests on the basis of where they are lodging. It is the further policy of the State of Vermont "to promote winter sports and summer and winter recreational facilities within its boundaries and to provide for the public good and benefit by the utilization of state-owned lands in recreational areas."
5. Mt. Mansfield Company, Inc. is a Vermont corporation with its principal place of business in Stowe, Vermont.
6. The State of Vermont, through its authorized personnel, Perry H. Merrill and Albert W. Gottlieb, executed a lease in June, 1960 from the State of Vermont to Mt. Mansfield Company, Inc. of land, buildings and ski lifts in the town of Stowe, Vermont on the east side of Mt. Mansfield.
7. Said lease is in evidence as Plaintiff's Exhibit No. 4. Paragraph 2 of said lease provides for a veto power in the lessor State of Vermont as to proposed construction by the lessee Mt. Mansfield Company, Inc. Paragraph 12 of said lease provides for written approval by the lessor of any cutting of trees to be done by the lessee. Paragraph 3 of said lease provides that no lift facilities may be constructed on state-owned land within ten miles from the leased premises unless written consent is obtained from the lessee. Paragraph 4 of said lease provides for a lease term of ten years with the lessee having the option to extend the lease for five additional terms of ten years. Paragraph 5 of said lease provides that the lessee pays to the lessor rental of five per cent of the gross receipts from the lift facilities on the leased premises and two and one-half per cent of the gross receipts from restaurants, sport shops and warming shelters on the leased premises. No percentage is paid on the gross receipts from ski instruction conducted by the lessee on the leased premises. The percentage rental payments received by the lessor from the lessee since 1960 are:

 January 1, 1960 - October 31, 1960 ...................... $17,915.23
 November 1, 1960 - October 31, 1961 ...................... $23,977.88
 November 1, 1961 - October 31, 1962 ...................... $33,403.63
 November 1, 1962 - October 31, 1963 ...................... $41,172.92

Paragraph 9 of said lease provides for submission by the lessee of its lift charges to the lessor and for approval of any increased lift charges between specified dates. Paragraph 10 of said lease provides that the lessee shall insure itself and the lessor against public liability from the operation of the lift facilities. Paragraph 11 of said lease provides that all lifts and buildings on the leased premises are property of the lessor. Paragraph 17 of said lease provides *633 that the lessee may use stateowned land not leased to it in connection with its business. Paragraph 19 of said lease regulates the period of operation by the lessee of lift facilities on the leased premises. Page 10 of said lease provides for a right of entry and inspection by the lessor of the leased premises, and provides for the exclusive right of the lessee to conduct a ski school on the leased premises. The lease between the State of Vermont and Mt. Mansfield Company, Inc. provides for an auditor's report with reference to the payment of rentals due the State of Vermont under this lease. The charges to be made under the lease are entirely within the control of the lessee except that no increase can be made in the list of charges filed with the State Board of Forests and Parks between October 31 of any year and October 31 of the following year except with the approval of the State Board of Forests and Parks. The lease is silent as to reductions in charges made by the lessee.
8. In the Mt. Mansfield area the Mt. Mansfield Company, Inc. owns in fee approximately 4100 acres of land. By the lease of June 1960, the Mt. Mansfield Company leases from the State of Vermont approximately 1200 acres of land. On the land leased from the State is a single chair lift and a double chair lift and part of a T-bar lift, the upper part of the T-bar lift being on land owned by Mt. Mansfield Company, Inc. The trails leading from the single and double chair lifts and from part of the T-bar lift on land leased from the State of Vermont almost without exception cross land owned by Mt. Mansfield Company, Inc. Spruce Peak, a major part of the skiing operation of Mt. Mansfield Company, Inc. is owned entirely by Mt. Mansfield Company, Inc. On this particular piece of land there is a double chair lift, a T-bar lift, parking facilities, restaurant facilities and warming huts and all necessary slopes and trails, all of which lie on land owned by Mt. Mansfield Company, Inc., itself. Another major part of the operation of Mt. Mansfield Company, Inc. is contained in what is called the "Toll House Ski Area." This area is located near where the road to the top of Mt. Mansfield joins the road leading from Stowe to Morrisville, which road is Vermont State Route 108. This area contains a T-bar lift, a ski instruction area, restaurants, sport shops, the Toll House Inn, parking areas and the principal office area for Mt. Mansfield Company, Inc. There are also several additional buildings on land owned by Mt. Mansfield Company, Inc., including The Lodge, a motel and restaurant enterprise, and staff headquarters, work shops and warehouses on the Harlow Hill section leading to the mountain. The ski school for intermediate to advanced skiers is at the Spruce Peak area, and the ski school at the Toll House area is for beginners, both of which are owned by Mt. Mansfield Company, Inc.
9. The Stowe Area Association, Inc. is a private corporation organized under the laws of the State of Vermont. It has for its purpose the promotion of recreational activities in the Stowe-Mansfield area. Among other things, it performs on a year-round basis the following services:
(1) Maintains an area information bureau.
(2) Performs the functions of a local Chamber of Commerce.
(3) Furnishes aid to new businesses and residents.
(4) Maintains a housing placement and reservation service.
(5) Maintains an employment clearinghouse.
(6) Furnishes public relations services between the Stowe-Mt. Mansfield area and the rest of the world.
(7) Owns and maintains an office building in Stowe, Vermont, as a center for the above services.
(8) Advertises on a national basis the skiing facilities and businesses of Stowe, Vermont. This is done by advertising in national sports magazines, in newspapers and by publicity brochures. *634 Stowe Area Association, Inc. is the only group representing the Stowe area in the promotion of recreational activities and could not exist except for the assessments obtained from its membership. This Association is vital for the continued growth and prosperity of the area. The promotional efforts of the Association benefit the entire area including D.D.B. Realty Corporation in spite of the fact said corporation has refused to contribute to the Stowe Area Association Inc.'s support. The Stowe Area Association, Inc. spent on its activities in the 1960-61 season the sum of $75,201; in the ski season of 1961-62, it spent on its activities the sum of $51,875. For the season of 1962-63, the Association budgeted expenses at $60,400.
10. All lodges, motels and rooming places in the town of Stowe, Vermont are eligible for membership in the Stowe Area Association, Inc. Almost every lodge or motel in Stowe is a member of this Association. As of April 1, 1963 the Stowe Area Association, Inc. had 71 members. There are at the present time four lodges in Stowe that are not members. Those include the plaintiff and also the State ski dormitory. Every member of the Stowe Area Association, Inc. is assessed dues for the operation of the Association. Every member has a vote on what the dues assessment will be and such assessment must be voted by two-thirds of the membership. This assessment is always on a basis uniform for all members. Dues have been assessed in the past and are being assessed in the present year on the following basis: the number of beds is multiplied by the rate charged for the bed and this figure is multiplied by 100. Fifty per cent of the resulting figure is treated as the estimated gross business for the year. The annual meeting of the members then computes the amount necessary to finance the Association during the year April 1 to April 1, and each member is assessed at the proportion that his business bears to the total estimated gross business of all members. The last annual meeting set a figure of 2% of the 50% estimated gross business of each lodge as the dues for the year April 1, 1963 to March 31, 1964. Subsection (C) of the by-laws of Stowe Area Association provides for re-admission of a member after a period of nonmembership of more than twelve months. The requirement of re-entrance fee is explained by the fact that the applicant seeking re-admission has had the benefit of almost all of the services of Stowe Area Association, Inc. without participating in its cost. A new member seeking admission to the Stowe Area Association, Inc. must pay the same entrance fee as an old member seeking re-admission as it is felt that the new business has had the benefit of the development of the area by the Stowe Area Association, Inc.
11. The Lodge at Smugglers Notch, a part of Mt. Mansfield Company, Inc., is a member of the Stowe Area Association, Inc. and pays dues on the assessed basis. Mt. Mansfield Company, Inc., itself, except through such Lodge, is not a member. However, Mt. Mansfield Company, Inc. over the years in question has matched dollar for dollar every cent raised by the Stowe Area Association, Inc. from other sources such as dues. For instance, in the estimated budget of $60,400 for 1962-1963, Mt. Mansfield Company, Inc.'s share would be $30,200. This donation by Mt. Mansfield Company, Inc. is in addition to the regular dues paid by The Lodge at Smugglers Notch.
12. D.D.B. Realty Corporation is not now a member of the Stowe Area Association, Inc. D.D.B. Realty Corporation was a member of the Stowe Area Association, Inc. for the year 1960-1961, during which time the same plan was in effect as is now in effect and is known as the Mid-week Ski Vacation Plan. The plaintiff, D.D.B. Realty Corporation, by its own admission does not wish to associate with the Stowe Area Association, Inc. and has not applied for membership since the 1960-1961 season. D.D.B. Realty Corporation has always been eligible to become a member *635 of Stowe Area Association, Inc. but has continued to decline to do so. If D.D.B. Realty Corporation were a member of Stowe Area Association, Inc., it would have been entitled to all the benefits derived from its membership in such organization. In order to regain membership in the Stowe Area Association, Inc., it must comply with subsection (C) of the by-laws of the Stowe Area Association, Inc. and pay the required re-entrance fee. As has been noted in Finding of Fact No. 2, D.D.B. Realty Corporation owns two lodges, known as Topnotch and Bottomnotch, which accommodate approximately 60 and 22 persons respectively. These two lodges are on one unit of property owned by the D.D.B. Realty Corporation. D.D.B. Realty did recently apply to have the part of the property known as Bottomnotch become a member without seeking admission to the Topnotch. The Stowe Area Association, Inc. rejected this application of Bottomnotch on the ground that it is necessary for any lodge applyng for membership to apply on the basis of all beds which it proposes to rent during the year in question and consequently since Bottomnotch and Topnotch are owned by a single corporation the Stowe Area Association, Inc. could not admit only a part of the lodges of that corporation. Bottomnotch was subsequently rented to the Stowe Preparatory School and has not been used as a lodge in the recent past.
13. Starting in the ski season of 1959-1960, and continuing yearly thereafter, the Stowe Area Association, Inc. advertised in its periodicals and brochures a Mid-Week Ski Vacation Plan, which plan, at selected times through the ski season, offered a special rate for ski school lessons and the use of all lifts for five-day periods, which five-day periods were always Monday through Friday. This plan was the plan of the Stowe Area Association, Inc. and was advertised by it throughout the ski world. This schedule of reduced charges at the Mt. Mansfield ski area for the use of ski lifts and ski school instruction during weekday periods is popularly known as "Learn to Ski Weeks". This Mid-Week Vacation Plan is designed to bring in business during the slack period on Mt. Mansfield. Mt. Mansfield Company, Inc. has cooperated with the Stowe Area Association, Inc. in the operation of this plan.
14. The special rate offered in the Mid-Week Vacation Plan for the use of the lifts and ski schools of Mt. Mansfield Company, Inc. is available only to guests of the member-lodges of Stowe Area Association, Inc. Therefore, guests of ski lodges in Stowe which are not members of the Stowe Area Association, Inc. [these non-members including the plaintiff D.D.B. Realty Corporation and also the State Ski Dorm] have been excluded from the Mid-Week Vacation Plan at the Mt. Mansfield ski area during the 1961-1962, 1962-1963 and 1963-1964 ski seasons. Guests of all ski lodges located outside of the town of Stowe have been excluded from the Mid-Week Vacation Plan at Mt. Mansfield ski area during these same years. Skiers who commute to the Mt. Mansfield ski area from residences leased or owned and within or outside Stowe have also been excluded from the Mid-Week Vacation Plan at the Mt. Mansfield ski area during these same years. However, it should be noted at this time that basis for such exclusion is that they are not guests of a member-lodge of the Stowe Area Association, Inc. These guests are not entirely excluded since they have the right to become a guest at any one of the member-lodges and thus become eligible for the Mid-Week Vacation Plan. The only "persons" who are excluded from the Plan are lodges which are not, or cannot become, members of the Stowe Area Association, Inc. The Mid-Week Vacation Plan could not be operated if opened to all skiers in the area as it would reach a size which would make it unmanageable.
15. Skiing in Vermont is a winter sport of increasing popularity which has an annual season running from mid-December to mid-April. The Mid-Week *636 Vacation Plan is becoming increasingly popular with patrons of the Mt. Mansfield ski area. The patronage by ski seasons for the Mid-Week Vacation Plan has been as follows:

 Season Attendance
1959-60 1,757
1960-61 1,489
1961-62 2,964
1962-63 4,183
1963-64 4,415 (includes week of
 March 2-6, but not
 week of March
 9-13, 1964.)

16. Since the plaintiff D.D.B. Realty Corporation is not a member of the Stowe Area Association, Inc., the guests of the lodge of the plaintiff are not charged equally under the rate schedule for use of ski lifts and ski school instruction at the Mt. Mansfield ski area, when compared to guests of lodges belonging to the Stowe Area Association, Inc. The cost of equivalent use of ski lifts and ski school instruction to a skier ineligible for the Mid-Week Vacation Plan is in excess of 50% greater. The cost for an eligible skier for the use of the lifts and ski schools is $30.00 per week. A non-eligible skier for $35.00 can use all the lifts for the same five-day period by buying a "day-ticket" for $7.00 per day. He cannot make use of the Mt. Mansfield facilities of the ski school which the eligible skier is allowed to use at no extra cost.
17. The plaintiff D.D.B. Realty Corporation has found it necessary in order to attract and retain weekday guests at its lodge to reimburse them for the extra expense incurred in purchasing tickets for ski lifts and ski lessons at the Mt. Mansfield ski area because they have not been permitted to enroll in the Mid-Week Vacation Plan. During the Mid-Week Vacation Plan week of February 24-28, 1964, the plaintiff spent over four hundred dollars to reimburse guests for extra expense incurred in buying tickets for ski lifts and ski lessons because they were not permitted to enroll in the Mid-Week Vacation Plan. The plaintiff has lost, and will continue to lose, business at its lodge because the Mid-Week Vacation Plan is publicized as restricted to guests of lodges which are members of the Stowe Area Association, Inc. It is difficult to calculate the total loss of business which the plaintiff has incurred because its guests are ineligible for the Mid-Week Vacation Plan. The plaintiff to reinstate its lodge in the Stowe Area Association, Inc. would have to pay a total charge of $3,140.00, the requisite readmission fee as computed by the by-laws of the Stowe Area Association, Inc.

CONCLUSIONS OF LAW
Although only 23% of the total area involved in this matter is owned by the State of Vermont, the State's land is the very heart of the Mt. Mansfield operations. The restaurant involved in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) was on land and within a building which was entirely publicly owned. It is the opinion of this Court that the action of which the plaintiff herein complains does constitute "state action."
Therefore, the key questions involved in this case are whether under the Due Process Clause the plaintiff's freedom of association is abridged and whether the plaintiff is within the purview of the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment to the U. S. Constitution states in Section One:
"* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
The threshold question, however, which must be decided is whether the plaintiff corporation has standing to sue under the aforementioned clauses of the Fourteenth Amendment. If it does not, *637 then no further determinations by this Court are required.
It is clear that a corporation is not a "citizen" within the meaning of the Privileges and Immunities clause of the Fourteenth Amendment and would have no standing to sue before this Court for an alleged violation by the State of Vermont of this clause. Paul v. Virginia, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1868).
Insofar as the Due Process clause applies to "property", a corporation is considered a "person". Insofar as the Due Process clause applies to "liberty" and "life", a corporation is without standing to sue for the loss of these two elements. Hague v. CIO, 307 U.S. 496 at 514 and 527, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Western Turf Association v. Greenberg, 204 U.S. 359 at 363, 27 S.Ct. 384, 51 L.Ed. 520 (1907); Northwestern National Life Insurance Co. v. Riggs, 203 U.S. 243 at 255, 27 S.Ct. 126, 51 L.Ed. 168 (1906). On the other hand, there are cases where the artificial body of a plaintiff corporation has been allowed standing to sue for these subjective elements possessed by human beings, although such allowance was often over vigorous dissent. Wheeling Steel Corp. v. Glander, 337 U.S. 562, 594, 69 S.Ct. 1291, 93 L.Ed. 1544 (1949); Connecticut General Life Insurance Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673 (1938); Grosjean v. American Press, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). It is perhaps worthy to note that in many of these latter cases, the "liberty" or "life" claimed to have been impinged is one which an inanimate corporation could possess and does not affect human emotions or sensitivities. However, this fine distinction does not always appear to hold true. Congress of Racial Equality v. Douglas, 318 F.2d 95 (5th Cir.) cert. denied, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963).
Finally, it is clear that a corporation is a "person" within the purview of the Equal Protection clause of the Fourteenth Amendment. Smyth v. Ames, 169 U.S. 466 at 522, 18 S.Ct. 418, 42 L.Ed. 819 (1898). It is therefore clear that the plaintiff herein has standing to sue, at least on the basis that there has been unlawful discrimination against it through the denial of equal protection of the law. We shall therefore assume arguendo that the plaintiff corporation, D.D.B. Realty Corporation, has standing to sue under the Due Process clause also.
Plaintiff complains that the natural effect of the rate schedule as set forth in the Findings of Fact which allow for a Mid-Week Vacation Plan is to coerce the plaintiff into joining the Stowe Area Association, Inc. In the case of Lathrop v. Donohue, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961) which appears very analogous, the Supreme Court held that "in the light of the limitation of the membership requirement to the compulsory payment of reasonable annual dues, we are unable to find any impingement upon protected rights of association." In the instant case, the plaintiff is asked to do no more; to obtain the alleged benefits of the Stowe Area Association, it is only required to pay those annual dues assessed and any forfeitures it has incurred. It is not required to participate in any activities of the Association nor to endorse the Association's policies and activities. Further, the public interest so promoted by the lease of state land and the subsequent arrangements involving the Mt. Mansfield Co., Inc. and the Stowe Area Association, Inc. far outweigh the inconveniences to the plaintiff resulting from his required payment of annual dues, if he joins. The Court, therefore, finds no unconstitutional impingement upon plaintiff's freedom of association.
This Court is also of the opinion that the facts as found do not disclose any unlawful discrimination against the plaintiff herein under the Equal Protection clause. Nor do the facts as found disclose any unlawful discrimination against lodge owners in the Stowe area whose lodges are not located in the town *638 of Stowe, Vermont, nor against any Vermont citizens who reside at home, nor against non-residents of Stowe who are not guests at a lodge which is a member of the Stowe Area Association, Inc.
The Supreme Court has stated that although no precise formula has been developed, the Fourteenth Amendment permits the states wide scope of discretion in enacting laws (and thus in taking any other action) which affect some groups of citizens differently than others. "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." McGowan v. Maryland, 366 U.S. 420 at 425, 81 S.Ct. 1101, at 1105, 6 L.Ed. 2d 393 (1961). State action, which the plaintiff concedes must exist before the question of unlawful discrimination can even be considered, in order to be unlawful must be such that the selection or classification is capricious and arbitrary and rests upon unreasonable grounds. As the Supreme Court stated in Allied Stores of Ohio v. Bowers, 358 U.S. 522 at 527, 79 S.Ct. 437 at 441, 3 L.Ed.2d 480 (1959), "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."
The classification for the reduced rate made by the State, or its lessee the Mt. Mansfield Company, Inc., in the instant situation whereby it classifies on the basis whether or not a person is a guest of a member-lodge of the Stowe Area Association, Inc. is not capricious. It is part of an over-all plan for the promotion of the ski industry and the development of the Stowe area in general; the differentiation made by the Mt. Mansfield Company, Inc. rests upon a reasonable consideration of its overall policy. Indeed, if the classification as herein described were found to be an unlawful discrimination, it would mean that every Chamber of Commerce is unlawfully discriminating against nonmembers when it bestows its benefits upon paid-up members in furtherance of its objectives. Furthermore, it is not an arbitrary classification with a prohibitory exclusion since there is a simple and expedient manner in which the plaintiff can become a member of the group.

JUDGMENT ORDER
Wherefore, it is hereby ordered that plaintiff's request for a permanent injunction be and hereby is denied.
It is further ordered that the complaint of the plaintiff, as finally amended, be and hereby is dismissed.