Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 3, 2019

**2019 CO 47**

**No. 17SC200, *Colo. Dep't of Labor & Emp't, Div. of Workers' Comp. v. Dami Hosp., LLC*—Eighth Amendment—Corporations—Excessive Fines—Workers' Compensation Noncompliance.**

The supreme court considers whether the Eighth Amendment's prohibition on the government imposition of "excessive fines" applies to fines levied on corporations. Concluding that this Eighth Amendment protection does apply to corporations, the supreme court holds that the proper test to assess the constitutionality of government-imposed fines requires an assessment of whether the fine is grossly disproportional to the offense for which it is imposed, as articulated in *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).  The court of appeals' ruling is thus reversed and the case is remanded to that court for return to the Division of Workers' Compensation to determine whether the per diem fines at issue are proportional to the harm or risk of harm caused by each day of the employer's failure to comply with the statutory requirement to carry workers' compensation insurance.

**2019 CO 47**

**Supreme Court Case No. 17SC200**
*Certiorari to the Colorado Court of Appeals*
Colorado Court of Appeals Case No. 16CA249

**Petitioner:**

Colorado Department of Labor and Employment, Division of Workers' Compensation,

v.

**Respondents:**

Dami Hospitality, LLC; and Industrial Claim Appeals Office.

**Judgment Reversed**
*en banc*
June 3, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
John T. Lee, Senior Assistant Attorney General
Emmy A. Langley, Assistant Solicitor General
 *Denver, Colorado*

**Attorneys for Respondent Dami Hospitality, LLC:**
Law Offices of Daniel T. Goodwin
Daniel T. Goodwin
Paige Orgel
 *Broomfield, Colorado*

**Attorney for Amici Curiae Cato Institute and Independence Institute:**
David B. Kopel
 *Denver, Colorado*

No appearance on behalf of Industrial Claim Appeals Office.

**JUSTICE HART** delivered the Opinion of the Court.
**JUSTICE SAMOUR** concurs in part and dissents in part.
**JUSTICE HOOD** does not participate.

¶1    This case requires us to consider whether the Eighth Amendment's prohibition on the government imposition of "excessive fines" applies to fines levied on corporations.[1] We conclude that the purpose of the Excessive Fines Clause is to prevent the government from abusing its power to punish by imposing fines, and nothing in that purpose or in the text of the Eighth Amendment limits its reach to fines imposed on individuals. We further conclude that the proper test to assess the constitutionality of government fines under the Eighth Amendment is that set forth by the United States Supreme Court in *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), which requires an assessment of whether the fine is grossly disproportional to the offense for which it is imposed. We thus reverse the court of appeals' ruling and remand to that court for return to the Division of Workers' Compensation with instructions to, as appropriate and necessary, develop an evidentiary record sufficient to determine whether the $250–$500 fine that a business was required to pay for each day that it was out of compliance with Colorado's

---

[1] We granted certiorari to review the following issues:

1. Whether the protections of the Excessive Fines Clause of the Eighth Amendment apply to corporations;

2. Whether the court of appeals applied the correct test to determine the constitutionality of a civil fine; and

3. Whether the court of appeals reasonably concluded that the fine at issue violated the Eighth Amendment.

workers' compensation law is proportional to the harm or risk of harm caused by each day of noncompliance.

## I. Facts and Procedural History

¶2     Dami Hospitality, LLC ("Dami") is the owner-operator of a Denver motel located on Peoria Street. Dami employs between four and ten people at any given time. As an employer of three or more persons, Dami is required by statute to maintain workers' compensation insurance. *See* § 8-43-409, C.R.S. (2018).

¶3     Dami allowed its workers' compensation coverage to lapse on or about July 1, 2005. Upon receiving notification of the lapse from the Division of Workers' Compensation ("DWC"), Dami conceded the violation and paid a corresponding settlement in June 2006.

¶4     Approximately two months later, Dami again allowed its workers' compensation coverage to lapse. This time, Dami went without coverage from August 10, 2006, through June 8, 2007.

¶5     From June 9, 2007, to September 11, 2010, Dami carried the proper insurance, but the company's workers' compensation coverage again lapsed on September 12, 2010. Dami was without such insurance from that time until July 9, 2014.

¶6     On February 19, 2014, the DWC discovered that Dami had allowed its workers' compensation insurance to lapse for these periods of time and issued a notice to Dami regarding this. That written correspondence was dispatched to Dami's Peoria Street address, which was the address on file with the Colorado Secretary of State for both the limited liability company and its registered agent, Soon Pak. The DWC notice advised

4

Dami that it had twenty days to return an enclosed compliance questionnaire and to submit documents either establishing that it had maintained coverage during the relevant periods or demonstrating an exemption from the coverage requirement. It also specified that Dami could "request a prehearing conference on the issue of default."

¶7 After Dami failed to respond to the notice of subsequent violation, the DWC mailed a second notice to Dami on June 25, 2014, this time sending it to an East Dartmouth Place address.[2] For the second time, Dami was given twenty days to return the same compliance questionnaire and to submit documents either establishing coverage during the relevant periods or demonstrating an exemption from the coverage requirement. The DWC also specified, again, that Dami could request a prehearing conference on the issue of default.

¶8 On July 11, 2014, the DWC received a faxed certificate of workers' compensation insurance for Dami effective from July 10, 2014, through July 10, 2015. Dami did not offer any other documentation or any explanation for the extended periods of noncompliance.

¶9 Having received no claim of exemption or proof of coverage for the second and third periods of noncompliance, and no request for a prehearing conference, the DWC

---

[2] It is not clear from the record why the DWC mailed an additional subsequent violation notice to the East Dartmouth Place address. However, the record includes documentation from the Colorado Secretary of State's website indicating that the East Dartmouth Place address appears in Dami's May 11, 2000 Articles of Incorporation for both the "principal place of business" and its organizer, Soon Pak. Elsewhere, Pak identifies the East Dartmouth Place address as her personal residence.

concluded its legally mandated investigation into Dami's noncompliance on October 29, 2014. The applicable statutory framework provides that the DWC shall:

> For every day that the employer fails or has failed to insure or to keep the insurance required by articles 40 to 47 of this title in force, allows or has allowed the insurance to lapse, or fails or has failed to effect a renewal of such coverage: impose a fine of: (I) Not more than two hundred fifty dollars for an initial violation; or (II) Not less than two hundred fifty dollars or more than five hundred dollars for a second and subsequent violation.

§ 8-43-409(1)(b), C.R.S. (2018). In implementing this provision, the DWC promulgated Rule 3-6(D), 7 CCR 1101-3, which provides that:

> For the Director's finding of an employer's second and all subsequent defaults in its insurance obligations, daily fines from $250/day up to $500/day for each day of default will be assessed in accordance with the following schedule of fines until the employer complies with the requirements of the Workers' Compensation Act regarding insurance or until further order of the Director:
>
> Class VII 1-20 Days $250/Day
>
> Class VIII 21-25 Days $260/Day
>
> Class IX 26-30 Days $280/Day
>
> Class X 31-35 Days $300/Day
>
> Class XI 36-40 Days $400/Day
>
> Class XII 41 Days $500/Day

¶10 The DWC applied this statutory and regulatory regime in calculating the fine for Dami's second and third periods of noncompliance with the Workers' Compensation Act. On October 30, 2014, the DWC sent its "Specific Findings of Fact, Conclusions and Order to Pay Fine–Subsequent Violation" (the "Order") to Dami. This document categorized the fine amounts owed by Dami by the six classes of violation defined in DWC Rule

6

3-6(D), noting the per diem amount owed for each of the corresponding date ranges. The final paragraph of the order explained that the total amount Dami owed as a result of the 1,698 per diem fines was $841,200.

¶11 On November 18, 2014, the DWC received correspondence from Soon Pak, Dami's registered agent. In a letter written on Dami's behalf, Pak conceded that the business had failed to maintain workers' compensation insurance during the noticed periods. Pak explained that Dami's failure to consistently maintain coverage was a result of her reliance on others to maintain "business coverage." Pak stated that Dami's annual payroll is less than $50,000, and that the aggregate fine proposed by the DWC exceeded the business's gross annual income. Pak informed the DWC that Dami was thus unable to pay the aggregated per diem fines and requested leniency in the form of a penalty "that is more reasonable to the size of [the] business." Pak also asserted that there had never been a worker-related accident or injury at the motel, either when coverage was in place or during any period of Dami's noncompliance. Pak did not request a hearing on the issue of Dami's default on its workers' compensation insurance obligation.

¶12 The DWC construed Pak's correspondence as a petition to review the Order. The DWC then made settlement overtures, offering to decrease the fine by nearly half, to $425,000 (the aggregated minimum per diem fines permissible under section 8-43-409(1)(b)(II)). Dami did not accept the settlement, and instead submitted a brief in furtherance of the petition to review. Dami argued that (1) it had "reasonably believed that it was in compliance with the statute" at all relevant times; (2) the DWC failed to provide adequate and timely notice of Dami's noncompliance; (3) because Dami

7

promptly cured its default upon receiving notice, it should be assessed no penalty or at least a much smaller penalty; and (4) the assessed per diem fines were constitutionally excessive in violation of the Excessive Fines Clause of the Eighth Amendment.

¶13 The DWC issued an order upholding the fines. The DWC began by noting that the per diem fines were "not discretionary" and were properly calculated pursuant to section 8-43-409 and Rule 3-6(D)'s assessment classification schedule. Next, the DWC observed that the law places the responsibility for knowing whether workers' compensation coverage is consistently maintained on the employer and not on the DWC. Further, the order explained that Dami's policy was cancelled in 2006 due to nonpayment of required premiums and "its 2010 policy was cancelled for failure to comply with terms & conditions or audit failure." The DWC determined that both of those reasons for cancellation were within Dami's control. The DWC stated that Dami's procurement of coverage after receiving actual notice of its subsequent violation did not relieve it of responsibility to pay the statutory fines imposed for the prior 1,698 days of noncompliance. Finally, the DWC declined to address Dami's constitutional arguments, concluding that administrative agencies are not authorized to "pass on the constitutionality of statutes."

¶14 Dami appealed to the Industrial Claim Appeals Office ("ICAO"). The ICAO rejected all but Dami's excessive fines argument. The ICAO remanded the matter to the DWC, directing it to review the constitutionality of the aggregated per diem fines assessed in accordance with the test established by the court of appeals in *Associated Business Products v. Industrial Claim Appeals Office*, 126 P.3d 323 (Colo. App. 2005). That

8

test, borrowed from United States Supreme Court Fourteenth Amendment jurisprudence, requires consideration of "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases." *Id.* at 326 (citing *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 425 (2001)).

¶15 Without holding a hearing, the DWC ultimately issued a supplemental order concluding that "Rule 3-6(D) incorporates and addresses all of the elements of the *Associated Business Products* test, and thus that the fine of $841,200.00 assessed against [Dami] according to that Rule is appropriate." The DWC explained that the graduated nature of the daily fines, increasing as the length of the period of noncompliance increases, accounted for the degree of reprehensibility of the conduct. The potential harm caused by noncompliance, according to the DWC, was in line with the fines because each day of noncompliance presents a risk that an employee will be injured and insurance will not be in place to cover that injury. And because the penalties are statutorily imposed and apply to all violators equally, Rule 3-6(D) ensures that there is no disparity between the fines imposed on Dami and fines imposed on any other noncompliant employer.

¶16 Dami again appealed to the ICAO, which affirmed the DWC's supplemental order.

¶17 Dami then appealed to the court of appeals. The division set aside the assessment of aggregated per diem fines. *Dami Hosp., LLC v. Indus. Claim Appeals Office*, 2017 COA 21, ¶ 110, __ P.3d __. It assumed without deciding that the Excessive Fines Clause could be applied to challenge regulatory fees imposed on a corporation. *Id.* at ¶ 57. It

determined that the *Associated Business Products* test was the correct test to apply in assessing the constitutionality of the fee and that consideration of Dami's ability to pay the fine was a relevant factor in that assessment. *Id.* at ¶¶ 71–81. And it concluded that DWC abused its discretion by failing "to apply the *Associated Business Products* factors . . . to Dami's specific circumstances." *Id.* at ¶ 110. The division remanded the Order to the DWC for recalculation in accordance with its opinion. *Id.* The DWC petitioned for certiorari, and we granted the petition.

## II. Analysis

¶18 We first consider whether the Excessive Fines Clause affords corporations protection against constitutionally excessive fines. We conclude that it does. Next, we hold that the proper test for determining whether a fine is unconstitutionally excessive is whether it is grossly disproportional to the gravity of the subject offense. *See Bajakajian*, 524 U.S. at 334. We explain that the evaluation of disproportionality should include consideration of the company's ability to pay the fine. We then consider whether the gross disproportionality analysis should be applied to each per diem fine or to the aggregate amount imposed for 1,698 days of noncompliance. We hold that where, as here, a statute expressly states that each day a party fails to comply with a legal obligation "shall constitute a separate and distinct violation" of the law, the Eighth Amendment analysis must focus on each per diem fine imposed by statute. § 8-43-305, C.R.S. (2018). We then remand the case to the court of appeals with instructions to return it to the DWC for the development, as appropriate and necessary, of an evidentiary record to facilitate application of the proportionality analysis.

10

## A. Applicability of the Excessive Fines Clause to Corporations

¶19 Whether a particular constitutional guarantee applies to both natural persons and corporations "depends on the nature, history, and purpose" of the provision. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n.14 (1978). [3]

¶20 Guarantees that are "purely personal" or "limited to the protection of individuals" will not apply to corporations. *Id.* The established personal guarantees include the Fifth Amendment privilege against self-incrimination and the right to privacy. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."); *United States v. White*, 322 U.S. 694, 698–701 (1944) (Fifth Amendment); *NW Nat. Life Ins. v. Riggs*, 203 U.S. 243, 255 (1906) (noting that the "liberty" referred to in the Fourteenth Amendment is the liberty of natural persons).

¶21 On the other hand, when a guarantee is against certain government overreach, and is a "constitutional immunit[y] appropriate to [a corporate] body," this constitutional limitation on government power can apply to protect a corporation just as it may protect a natural person. *Hale v. Henkel*, 201 U.S. 43, 76 (1906). Thus, corporations have been recognized to have First Amendment rights to free speech and Fourteenth Amendment rights to due process and equal protection of the law. *See Metro. Life Ins. v. Ward*, 470 U.S.

---

[3] After oral argument in this case, the United States Supreme Court held that the Excessive Fines Clause is incorporated against the States by the Due Process Clause in *Timbs v. Indiana*, ___ U.S. ___, 139 S. Ct. 682, 687 (2019). The prohibition against imposing excessive fines thus does apply to Colorado's DWC.

869, 880 (1985) (equal protection); *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984) (due process); *First Nat'l Bank*, 435 U.S. at 783–84 (free speech). Similarly, corporations are protected from unreasonable searches and seizures, cannot have their property taken without just compensation, and cannot be tried twice for the same offense. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 122 (1978) (takings); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311–13 (1978) (unreasonable searches and seizures); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568–69 (1977) (double jeopardy).

¶22   With these cases as guideposts, in considering whether the Excessive Fines Clause applies to corporations we must evaluate both the purpose of the clause and the appropriateness of applying it to corporations.[4]

¶23   The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. On its face, the text of the Excessive Fines Clause does not suggest that its protections are limited to natural persons. The clause is a directive to the government not to impose excessive fines. It does not include any limitation on who merits protection from the imposition of excessive fines.

---

[4] Contrary to the court of appeals' suggestion that there has been a "tidal shift" toward favoring the application of constitutional guarantees to corporations, *Dami*, ¶ 58, this nature and purpose-based approach to evaluating the question has been applied by the United States Supreme Court since at least 1906, *see Hale*, 201 U.S. at 76.

¶24 The DWC argues that the other clauses of the Eighth Amendment offer an important textual clue to the meaning of the Excessive Fines Clause. Wielding the maxim of *noscitur a sociis*, which provides that the meaning of a phrase should be informed "by the neighboring words with which it is associated," *United States v. Williams*, 553 U.S. 285, 294 (2008), it asserts that (1) the prohibitions of excessive bail and cruel and unusual punishment can only be applied to protect natural persons, and, therefore (2) the Excessive Fines Clause must be limited in application to natural persons.

¶25 Unfortunately for the DWC, the United States Supreme Court has already abandoned *noscitur a sociis* in interpreting the Eighth Amendment. In *Austin v. United States*, 509 U.S. 602, 610 (1993), the Court concluded that the Excessive Fines Clause applied to prohibit excessive *civil* fines as well as excessive *criminal* fines when the purpose of the civil fine was, at least in part, to impose punishment. The Court reached that conclusion despite the fact that it had previously held that the Cruel and Unusual Punishment Clause applied only to criminal punishment. *See Ingraham v. Wright*, 430 U.S. 651, 666–68 (1977). In so holding, the *Austin* Court moved away from its earlier suggestion that the three clauses of the Eighth Amendment must all be interpreted to have the same reach. *See id.* at 664; *see also Austin*, 509 U.S. at 608–09 & n.5. Instead, the Court focused on the purpose of the Excessive Fines Clause itself—which is to prevent the government from abusing its power to punish through the imposition of fines, whether those fines are part of a criminal scheme or a civil one. *Austin*, 509 U.S. at 610–11.

13

¶26 The question we face, then, is whether there is justification to conclude that the purpose of the Excessive Fines Clause supports its application to protect corporations even if the other clauses in the Eighth Amendment do not. We conclude that there is. The bail clause is necessarily limited to natural persons because corporations cannot be jailed, and therefore cannot be subject to bail. Similarly, cruel and unusual punishment cannot be imposed upon a corporation. In short, these two guarantees are not "appropriate to [a corporate] body." *Hale*, 201 U.S. at 76. By contrast, "[t]he payment of monetary penalties . . . is something that a corporation can do as an entity." *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 285 (1989) (O'Connor, J., concurring in part and dissenting in part). Moreover, the government regularly imposes a wide array of monetary penalties, both civil and criminal, on corporations for the purposes of punishing corporate misconduct and regulatory violations. And when the government imposes these punitive sanctions, we hold that it must do so in compliance with the Excessive Fines Clause.

## B. The Proportionality Standard for Determining Whether a Fine is Constitutionally Excessive

¶27 Having determined that corporations are entitled to assert claims that fines imposed by the government for punitive purposes are excessive in violation of the Eighth Amendment, we next consider what standard a corporation must meet to succeed in such a claim. The United States Supreme Court articulated that standard in *Bajakajian*, where it explained that "[i]f the amount of the [fine] is grossly disproportional to the gravity of the . . . offense, it is unconstitutional." 524 U.S. at 337.

14

¶28     In adopting this proportionality standard, the Court in *Bajakajian* relied on two "particularly relevant" considerations. *Id.* at 336. The first is that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Id.* at 336 (citing *Solem v. Helm*, 463 U.S. 277, 290 (1983), and *Gore v. United States*, 357 U.S. 386, 393 (1958)). The second is that judicial determinations as to the gravity of an offense are inherently imprecise. *Id.* These considerations, explained the Court, "counsel against requiring strict proportionality" between the amount of a punitive fine and the gravity of the underlying offense, and for adopting the test previously articulated in cases interpreting the Cruel and Unusual Punishment Clause. *Id.* (citing *Solem*, 463 U.S. at 288 and *Rummel v. Estelle*, 445 U.S. 263, 271 (1980)). Under that test, courts evaluating proportionality must consider whether the defendant was treated more harshly (1) than others within the same jurisdiction and (2) than he would have been in any other jurisdiction. *Solem*, 463 U.S. at 303.

¶29     Neither the court of appeals nor the ICAO hearing panel in this case applied the United States Supreme Court's "gross disproportionality" test to evaluate the fines imposed on Dami for its protracted failure to maintain workers' compensation insurance. Instead, both relied on the test articulated by the court of appeals in *Associated Business Products.* This test is inconsistent with *Bajakajian.* Today, we bring Colorado law into conformity with federal law and hold that the proper standard for determining whether a regulatory penalty amounts to a constitutionally excessive fine in violation of the Eighth Amendment is whether it is grossly disproportional to the gravity of the underlying offense.

15

¶30    The United States Supreme Court has not addressed whether the Eighth Amendment proportionality assessment can or should include consideration of the ability of the person being fined to pay that fine.  The only reference to the issue in *Bajakajian* itself was a footnote observing that: "respondent does not argue that his wealth or income are relevant to the proportionality determination or that full forfeiture would deprive him of his livelihood . . . and the District Court made no factual findings in this respect."  524 U.S. at 340 n.15.  The Court has, however, in a number of cases observed that the historical precursor to the Eighth Amendment, the English Magna Carta, limited the power of government to impose punitive fines by, among other things, requiring that a penalty "not be so large as to deprive [a person] of his livelihood."  *Browning-Ferris*, 492 U.S. at 271; *see also Bajakajian*, 524 U.S. at 335 (same).  And the Court's most recent Excessive Fines Clause decision cited with approval a statement from Blackstone's Commentaries on the Laws of England that "no man shall have a larger amercement imposed upon him, than his circumstances or personal estate will bear."  *Timbs*, ___ U.S. ___, 139 S. Ct. at 688 (citing 4 W. Blackstone, Commentaries on the Laws of England 372 (1769)).  We see in the Court's citation to these historical predecessors of the Excessive Fines Clause, and their consideration of ability to pay, persuasive evidence that a fine that is more than a person can pay may be "excessive" within the meaning of the Eighth Amendment.

¶31    The concept of "proportionality" itself also persuades us that ability to pay is an appropriate element of the Excessive Fines Clause gross disproportionality analysis. A fine that would bankrupt a person or put a company out of business would be a

16

substantially more onerous fine than one that did not. For some types of criminal or regulatory infractions, a penalty that would have that kind of grave consequence might be warranted, whereas for others the severity of that outcome may be out of proportion to the gravity of the offense for which the fine is imposed. We thus conclude that courts considering whether a fine is constitutionally excessive should consider ability to pay in making that assessment.

## C. The Proportionality Analysis Must Consider Each Individual Per Diem Fine

¶32 Dami argues that the proportionality analysis should be applied to the aggregate $841,200 that the company was assessed, and not to each of the $250-$500 daily fines. We disagree. The workers' compensation statutory regime explicitly states that "[e]very day during which an employer . . . fails to perform any duty imposed by articles 40 to 47 of this title shall constitute a separate and distinct violation thereof." § 8-43-305. Moreover, the statute directs the DWC to impose a daily fine of $250–$500 for each day of noncompliance. The statute thus puts every employer on notice that it will be fined between $250 and $500 per day for each day that it is out of compliance with its legal obligations. While the assessment for the 1,698 per diem fines may have reflected a lump sum total owed by Dami, the fines were clearly imposed at a daily rate as a result of many daily violations.

¶33 In the criminal context, we have refused to aggregate sentences that were assessed individually for purposes of evaluating the proportionality of the sentences. In *People v. Lucero*, 2017 CO 49, ¶ 23, 394 P.3d 1128, 1133–34, we rejected the defendant's argument

17

that his four consecutive sentences totaling eighty-four years for four separate crimes amounted in the aggregate to a sentence of life without the possibility of parole. We concluded instead that "[t]he question of whether Lucero's consecutive term-of-years sentences meet the dictates of the Eighth Amendment's proportionality principle requires consideration of each individual crime and each sentence imposed." *Id.* at 1134; *see also Close v. People*, 48 P.3d 528, 538–40 (Colo. 2002) (holding that, because each sentence is a separate punishment for a separate offense, the proper question is whether each sentence is appropriate for its related offense and not whether the aggregate of the sentences is disproportional in the abstract). We see no principled justification for taking a different approach in the context of the regulatory fines at issue here.

¶34 We recognize that, under the circumstances, the fact that Dami did not receive notice of noncompliance regarding its subsequent violations from the DWC for several years resulted in a staggeringly high-dollar aggregate total of per diem fines.[5] However, responsibility for that unfortunate circumstance rests squarely on the shoulders of Dami, and perhaps its business advisors. Dami was in fact well aware that it had an obligation to carry workers' compensation insurance and that it would be subject to daily fines for noncompliance; at the very moment that the company allowed its insurance to lapse in

---

[5] Indeed, this case featured prominently in the legislature's decision to amend section 8-43-409 in 2017 to limit the maximum period for which fines can be imposed to "three years prior to the date an employer is notified by the division of a potential violation." § 8-43-409(c). *See* David Gallivan, *HB 17-1119 Brings Reform to Workers' Compensation*, 46 Colo. Law., Nov. 2017, at 58, 59.

2006 it was in the process of settling with the DWC for a year-long period of noncompliance during 2005 and 2006. Moreover, under the workers' compensation statutes, it is the employer who is responsible for ensuring that it is in compliance with the obligation to carry insurance. The statute makes plain—by excluding any mens rea element and imposing a daily fine for each day that an employer fails to have insurance or allows its insurance to lapse—that the legislature intended that a violation of section 8-43-409(1)(b)(II) be a strict-liability offense.

¶35 There are good and practical reasons for putting the burden on the employer, and not on the DWC, to ensure compliance. First, workers' compensation insurance is not paid to or by the DWC. Instead, it is private insurance coverage that an employer purchases from an insurance company. *See* Division of Workers' Compensation, *Employer's Guide* 2 (Dec. 2015).[6] The employer is therefore in a better position than the DWC to know whether it has obtained the required coverage. Second, the lack of a mens rea element in the requirement to maintain coverage discourages both negligent noncompliance (where an employer should have known that coverage was lacking) on the one hand, and gamesmanship (where an employer knew coverage was lacking but willfully failed to procure or maintain a compliant policy) on the other. Adopting a rule

---

[6] We take judicial notice of this official publication, as it appears on the Colorado Department of Labor and Employment's website. *See* https://www.colorado.gov/pacific/sites/default/files/Employers_Guide_2015.pdf [https://perma.cc/6TVT-DS7J].

that focuses on the proportionality of the aggregate of daily fines, rather than the proportionality of each daily fine, would actually incentivize employers to forego workers' compensation coverage for as long as possible, hoping that the DWC would not notice until the fines had accrued for an extended period of time so that they could then argue that the fine for noncompliance was excessive.

¶36 We thus cannot allow the size of aggregated per diem fines in this case to distort our Eighth Amendment jurisprudence more generally.[7] When a fine is imposed on a per diem basis, with each day constituting an independent violation, the evaluation of whether a fine is excessive must be done with reference to each individual daily fine.

### III. Remand

¶37 There is scant evidence in the record before us, particularly about Dami's ability to pay the daily fines. Dami asserted in a letter to the DWC that it could not pay without going out of business. Dami did not request the evidentiary hearing to which it was entitled in order to develop a record supporting that claim. Moreover, because the test we announce today is a new one in Colorado, we remand to the court of appeals so that it can return the case to the DWC. Assuming it is appropriate or necessary to conduct an evidentiary hearing at this stage, the DWC should permit the parties to develop a record

---

[7] Dami's arguments about lack of notice and the consequent length of the period of noncompliance are more properly understood as supporting a due process claim that is outside the scope of the issues upon which we granted certiorari. The fact that the DWC did not catch Dami's noncompliance for a number of years is not relevant to the Eighth Amendment argument.

that permits a complete evaluation of whether the $250-$500 fine imposed on Dami each day that it violated the workers' compensation laws was constitutionally excessive in accordance with this opinion.

### III. Conclusion

¶38 In sum, we hold that the Eighth Amendment does protect corporations from punitive fines that are excessive. The appropriate test to apply in assessing whether a regulatory fine violates the Excessive Fines Clause is the "gross disproportionality" test. In assessing proportionality, a court should consider whether the gravity of the offense is proportional to the severity of the penalty, considering whether the fine is harsher than fines for comparable offenses in this jurisdiction or than fines for the same offense in other jurisdictions. In considering the severity of the penalty, the ability of the regulated individual or entity to pay is a relevant consideration. And the proportionality analysis should be conducted in reference to the amount of the fine imposed for each offense, not the aggregated total of fines for many offenses.

¶39 We therefore reverse the ruling of the court of appeals and remand this case for return to the DWC so that the DWC can, as necessary and appropriate, permit the development of an evidentiary record sufficient to allow the application of this Excessive Fines Clause analysis.

**JUSTICE SAMOUR** concurs in part and dissents in part.
**JUSTICE HOOD** does not participate.

21

JUSTICE SAMOUR, concurring in part and dissenting in part.

¶40 My colleagues in the majority and I are generally on the same page in this case. I write separately because I disagree that the proportionality analysis must be conducted with regard to each individual per diem fine, as opposed to the total fine of $841,200. Like the court of appeals, I would focus on the aggregate fine that the Director imposed, which is what triggered Dami's appeal. Dami has never argued that the daily fine of $250 to $500 is unconstitutionally excessive; rather, Dami has contended all along that the $841,200 fine is.

¶41 I agree that section 8-43-409(1), C.R.S. (2018), required the Director to impose a penalty on Dami, and that once Dami obtained insurance coverage (after receiving the notice from the Director), the only available penalty was a fine of between $250 and $500 for every day Dami was noncompliant.[1] But the penalty imposed in October 2014—the state action Dami complains about—was the $841,200 fine, not the per diem rate of $250 to $500. As the majority acknowledges, the Director did not send Dami a notice at the beginning of the violation period to inform it that he intended to impose a prospective fine of $250 to $500 every day until it obtained the required insurance. Maj. op. ¶ 34. Had

---

[1] The statute also contemplates a cease-and-desist order and an order for injunctive relief as potential penalties. *See* § 8-43-409(4) ("The issuance of an order to cease and desist, the imposition of a fine . . . , or the issuance of an order for injunctive relief . . . shall be the penalty . . . ."). However, issuing such an order after Dami had come into compliance with the insurance mandate wouldn't have made sense.

1

he done so, I might accept looking at the daily fine to determine constitutional proportionality. Instead, he waited *more than seven years* to contact Dami about a purported violation and then imposed a *retroactive* fine of almost a million dollars.[2] To be sure, Dami, as an employer, was responsible for complying with section 8-43-409(1). *Id.* But I nevertheless find it troubling that, under today's decision, if the Director retroactively imposes a "staggeringly high-dollar aggregate" fine, *id.*, simply because he delayed taking action to correct a potential violation, the employer's only recourse is to argue that the daily fine amount is excessive.

¶42 The majority today holds that the Eighth Amendment offers Dami protection against excessive fines. *Id.* at ¶¶ 18, 26, 38. I wholeheartedly agree. Unfortunately, the majority opinion, at least in this context, has no teeth because it says that Dami is restricted to challenging the daily fine amount. That's where the majority and I part company. I would conclude that, to be meaningful, the proportionality analysis has to focus on the total fine the Director required Dami to pay ($841,200), not the daily fine amount ($250 to $500) used to calculate the total fine. In my view, to focus on the daily fine amount instead of the total fine Dami must pay renders the entire constitutional analysis an exercise in futility.

---

[2] Dami went without coverage between August 10, 2006 and June 8, 2007, and again between September 12, 2010 and July 9, 2014. The Director did not attempt to notify Dami about a potential violation until February 19, 2014. He then waited until June 25, 2014, to mail a second notice to a different address.

¶43     Notably, under the majority's analytical framework, if the Director had waited twelve years to contact Dami and then imposed a retroactive fine of over two million dollars ($500 × 4,380 days), the outcome would be identical: Dami would still be limited to challenging whether the daily fine amount of $250 to $500 is excessive. The same would be true if the Director had contacted Dami within a month of a potential violation and imposed a total fine of only $15,000 ($500 × 30 days). Stated differently, whether a fine of over two million dollars is excessive and whether a fine of $15,000 is excessive both depend on whether the daily fine amount of $250 to $500 is excessive. Hence, in evaluating the constitutionality of a section 8-43-409 fine under the Eighth Amendment's Excessive Fines Clause, the majority renders the total amount of the fine imposed completely inconsequential. To my mind, that greatly risks immunizing the Director and the statute from constitutional attack under the Eighth Amendment.[3] So long as the daily fine amount is not excessive, it matters not whether the Director imposes a $1,000 fine or a $10,000,000 fine.

¶44     The reality here is that the Director imposed a one-time, aggregate fine retroactively when he advised Dami in October 2014 that it was required to pay $841,200. He did not impose a fine in the amount of $250 to $500 1,698 times (a fine each day Dami

---

[3] In some circumstances, such as when a fine is the only feasible penalty, the Director is required by the statute to impose a retroactive fine, the total amount of which is calculated by multiplying the number of days an employer was noncompliant times $250 to $500.

was in violation of section 8-43-409(1)).[4] Given that the Eighth Amendment's Excessive Fines Clause applies, Dami should be allowed to challenge the constitutionality of the Director's action—i.e., the one-time, aggregate fine imposed after the fact in October 2014.

¶45 Accordingly, like the majority, I would reverse the judgment of the court of appeals and remand the case with instructions to have it returned to the Division of Workers' Compensation. However, I would do so on slightly different grounds. For this reason, I respectfully concur in part and dissent in part.

---

[4] I understand that section 8-43-305, C.R.S. (2018), provides that "[e]very day during which any employer . . . fails to perform any duty imposed by articles 40 to 47 of this title shall constitute a separate and distinct violation thereof." But the fact remains that the Director imposed a one-time, aggregate, retroactive fine in the amount of $841,200.