# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DULING ENTERPRISES, LLC, DBA STUFFY'S II RESTAURANT, | No. 59382-3-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES, | PUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Duling Enterprises appeals the superior court's order affirming the Department of Labor and Industries' imposition of fines totaling $936,000. Duling Enterprises contends that the fines violate the excessive fines clauses of the state and federal constitutions.

We disagree and affirm.

## FACTS

In response to the COVID-19 pandemic, the Governor issued several emergency proclamations prohibiting restaurants from offering dine-in services. *See, e.g.*, Proclamation of Governor Jay Inslee, No. 20-25.9 (Wash. Dec. 10, 2020), https://governor.wa.gov/sites/default/files/proclamations/proc_20-25.9.pdf. The proclamations noted that there had been a substantial rise in COVID-19 cases and hospitalizations and that "a significant risk factor for spreading the virus is prolonged, close contact with an infected person

indoors." *Id.* The Department of Labor and Industries (L&I) issued a rule requiring employers to comply with conditions of operation required by the Governor's emergency proclamation. Wash. St. Reg. 20-23-076 (WAC 296-800-14035 emergency rule, effective Nov. 16, 2020).

Duling Enterprises (Duling) owns Stuffy's II, a full-service restaurant. Stuffy's provided indoor dining services during the COVID-19 pandemic in violation of the Governor's emergency proclamation. Following inspections by L&I, L&I issued 6 separate citations to Stuffy's for 52 violations of WAC 296-800-14035(2), which required employers to comply with the Governor's emergency proclamation. L&I classified each of the 52 days Stuffy's was open as a separate willful serious violation and imposed a civil penalty of $18,000 for each violation.

L&I assessed the penalty for each violation in accordance with WAC 296-900-140. WAC 296-900-14010 provides the base penalties for a violation of Washington Industrial Safety and Health Act of 1973 (WISHA), ch. 49.17 RCW, by calculating the gravity of the offense. Gravity is calculated by multiplying the violation's severity by its probability. WAC 296-900-14010. L&I assessed the severity of the hazard presented by offering dine-in services to be a 3 on a scale from 1 to 3 and the probability of harm to be a one on a scale of 1 to 3. This resulted in a base penalty of $3,000 for each violation. Because Duling had fewer than 251 employees at the time of the inspections, the base penalty was reduced to $1,800 per violation. The base penalty was then multiplied by 10 because the violations were willful, resulting in a $18,000 penalty for each violation.

Duling appealed the citations to the Board of Industrial Insurance Appeals (Board). Duling argued, in part, that the fines are excessive under the state and federal constitutions, given the minimal harm done and Duling's inability to pay. Glenda Duling, one of the two members of

2

Duling Enterprises, submitted an affidavit stating that Duling operated at a loss in 2020 and 2021. Glenda Duling attached Duling's 2020 and 2021 income tax return forms, which reflected that Duling operated at a loss in 2020. The chief financial officer of Duling testified in a deposition that Duling applied for and received relief under the Paycheck Protection Program.

The Board affirmed the citations, and concluded that the Board "does not have authority to address constitutional issues or rule on the constitutionality of statutes or administrative process." Clerk's Papers at 197. Duling appealed the Board's decision to the superior court, again arguing that the fines assessed were excessive. The superior court affirmed the Board's decision and concluded that the fines were not excessive. Duling appeals.

DISCUSSION

I. EXCESSIVE FINES

Duling argues that the total fine imposed by L&I violated the excessive fines clause because it was grossly disproportional to Duling's WISHA violations. Duling contends this is so because the total fine is outside of the statutory maximum for a gross misdemeanor, no actual harm resulted from its violations, and it is unable to pay the fine. We conclude that Duling has not established that the total fine levied against it is excessive.

A. Legal Principles

In WISHA appeals, we sit in the same position as the superior court in reviewing the Board's decision. *Dep't of Lab. & Indus. v. Tradesmen Int'l, LLC*, 198 Wn.2d 524, 534, 497 P.3d 353 (2021). We review the Board's decision on its own record. *Id.* We determine whether the Board's findings of fact are supported by substantial evidence and whether they support the Board's conclusions of law. *Id.*

Both the state and federal constitutions prohibit the government from imposing excessive fines. *City of Seattle v. Long*, 198 Wn.2d 136, 158, 493 P.3d 94 (2021). To trigger the protection of the excessive fines clause, "a sanction must be a 'fine' and it must be 'excessive.' " *Id.* at 162. A sanction is a "fine" when it is at least partially punitive. *Id.* A fine is excessive if it is "grossly disproportional to the gravity of a defendant's offense." *Id.* at 166. Our supreme court has adopted the Ninth Circuit's test to determine whether a fine is grossly disproportional. *Id.* at 167. The test considers, at least, " '(1) the nature and extent of the [violation], (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused.' " *Id.* (internal quotation marks omitted) (quoting *State v. Grocery Mfrs. Ass'n*, 195 Wn.2d 442, 476, 461 P.3d 334 (2020)). We are also required to consider an individual's ability to pay the fine. *Id.* at 173. The party challenging a fine has the burden of demonstrating that the fine is excessive. *See id.* at 175 ("if the value of the fine is within the range prescribed by a legislative body, a strong presumption exists that a [fine] is constitutional."). We review whether a penalty violates the excessive fines clause de novo. *State v. Grocery Mfr.s Ass'n*, 198 Wn.2d 888, 899, 502 P.3d 806 (2022) (*GMA* II).

B. Application

Duling challenges only factors three and four of the test used to determine if a fine is grossly disproportional to the violation, and further contends that it lacks the ability to pay the fine.[1]

---

[1] The parties do not dispute that the penalties assessed against Duling were "fines."

*i. Gross Disproportionality Factors*

Duling contends that the total fine that L&I imposed is grossly disproportional to its violations because the third and fourth disproportionality factors weigh in favor of concluding the fine imposed was excessive. Specifically, Duling argues that the fine is grossly disproportional because the total fine amount exceeded the maximum fine available for a gross misdemeanor criminal offense and because no actual harm resulted from its violations. We disagree.

With respect to the third factor, we analyze the other penalties, especially the maximum penalties, the legislature has authorized for the offense. *See id.* at 904. The maximum penalty authorized by the legislature indicates a legislative judgment about the seriousness of the offense. *See U.S. v. Bajakajian*, 524 U.S. 321, 339 n.14, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). We grant substantial deference to the legislature's judgment about the appropriate punishment for an offense. *Id.* at 336. We also afford deference to penalty guidelines, especially where those guidelines consider the specific culpability of the offender. *U.S. v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004).

First, Duling argues that we must compare the total amount of fines imposed against it to the statutorily permissible fine for a single violation. Duling contends that *Long* supports this proposition because in that case, the court compared the sought-after fine of $550 to a single day's fine rather than the total fines that could have been imposed if the city had issued a ticket on each of the 90 days that Long violated the parking ordinance. But *Long* is factually distinct from this case. In *Long*, the court determined that impoundment of Long's vehicle and a $547 impoundment fee were excessive in light of the fact that the parking infraction itself only carried a $44 fine. In this case, Duling is challenging the constitutionality of fines directly incurred from 52 willful

violations of the WAC prohibiting employers from offering dine-in services. Here, it is appropriate to compare the fine imposed for each violation to the statutory maximum provided for individual violations.

Duling next argues that the fine is grossly disproportional because the fine imposed was greater than the $5,000 fine authorized for a gross misdemeanor. This argument appears to be based on RCW 43.06.220(5), which makes violations of the Governor's proclamation a gross misdemeanor. But courts analyzing this factor look at the range of permissible punishments provided by the statute being enforced. *See GMA* II, 198 Wn.2d at 903-04. Here, L&I relied on RCW 49.17.180 to enforce Duling's violations of WAC 296-800-14035, which authorizes a penalty of between $5,000-$70,000 *per willful violation*. RCW 49.17.180; WAC 296-800-14035. The $18,000-per-violation penalty is well within the authorized statutory range. Moreover, L&I expressly considered Duling's culpability in determining the appropriate fine within this range. L&I calculated the fee as outlined by WAC 296-900-140, 296-900-14010, and 296-900-14015; based on the severity of the hazard; the probability of an injury; and adjustments for the company's size, history of violations, and lack of good faith efforts to comply with safety regulations. Duling does not contend that L&I misapplied the regulations.

The fourth factor, the extent of the harm caused by the violation, also weighs against a finding of gross disproportionality. Duling argues that its violations did not result in any actual harm because there was no evidence that any Stuffy's employee actually contracted COVID-19 and was harmed by it. Essentially, Duling asks us to hold that a fine is grossly disproportional where a violation resulted only in the *risk* of harm, rather than *actual* harm. But the premise of Duling's argument is flawed because in this case there was actual harm.

Duling's analysis suggests that, in order to demonstrate harm, L&I must show that some individual inside Stuffy's on each day of operation actually had COVID-19. But no Washington case has required such a showing. In *GMA* II, for example, the government was not required to demonstrate that any voter actually tried to ascertain which organizations opposed GMO labeling efforts. Instead, it was enough that GMA's actions "struck at the heart of the principles embodied in the FCPA" which entitled voters to know who is contributing to political committees. *GMA* II, 198 Wn.2d at 904.

Here, Duling's repeated, willful violations frustrated the purpose of WISHA. WISHA was created to ensure "safe and healthful working conditions for every [person] working in the state of Washington." RCW 49.17.010. WISHA obligates employers to furnish a workplace free from hazards that are "likely to cause serious injury or death to his or her employees." RCW 49.17.060. Offering dine-in services on 52 separate occasions in the midst of a global pandemic and in willful violation of WAC 296-800-14035(2) caused actual harm because it significantly compromised WISHA's aim of ensuring safe and healthful working conditions by exposing employees to a substantial risk of contracting a potentially deadly disease. Moreover, L&I directly considered the fact that there was only a risk of contracting COVID-19 when it measured the probability of harm as a 1 out of 3. This factor weighs against a finding of gross disproportionality.

*ii. Ability to Pay*

Duling argues that the total fine imposed against it is excessive because Duling is unable to pay it. L&I contends that the inability to pay factor applies only to individuals, not corporations. As we explain below, we agree with Duling that corporations, like individuals, are entitled to have

inability to pay considered as a factor when a court determines whether a fine is excessive. However, Duling has not demonstrated that it is unable to pay the fine or that the fine is excessive.

First, we conclude that Duling's ability to pay the fine is a consideration under the excessive fines analysis. While no Washington court has applied this factor to a corporation, it is undisputed that our case law applies the protections of the excessive fines clause to corporate entities. *See GMA* II, 198 Wn.2d 888. And it is undisputed that Washington courts consider an individual's ability to pay when determining whether a fine is unconstitutionally excessive. *See Long*, 198 Wn.2d 173. Other jurisdictions that have similarly made these two conclusions also conclude that we must consider a corporation's ability to pay in determining whether the fine is excessive. *See Colorado Dep't of Lab. and Emp. v. Dami Hosp., LLC*, 442 P.3d 94 (Colo. 2019); *New York v. United Parcel Serv., Inc.*, 942 F.3d 554 (2nd Cir. 2019); *H&L Axelsson, Inc. v. Pritzker*, 16 F. Supp. 3d 353 (D. N.J. 2014); *People v. Ashford Univ., LLC*, 100 Cal. App. 5th 485, 319 Cal. Rptr. 3d 132 (2024). Those courts have reasoned that considering a corporation's ability to pay is consistent with the concept of proportionality because a fine that would "put a company out of business would be a substantially more onerous fine than one that did not." *Dami Hosp.*, 442 P.3d at 102.

That said, a fine is not necessarily excessive because a corporation is unable to pay it. *Id.* at 103. Such a harsh consequence may be warranted in light of the egregiousness of the violation and other proportionality factors. *Id.* We agree with these other jurisdictions that we must consider the corporation's ability to pay the fine, but that a corporation's inability to pay the fine does not automatically render the fine excessive.

As the party challenging the constitutionality of a fine, Duling had the burden of demonstrating that it is unable to pay. *See Long*, 198 Wn.2d at 174-75; *see also Ashford Univ., LLC*, 100 Cal. App. 5th at 535 (stating party opposing fine has burden to demonstrate trial court incorrectly found penalty did not exceed party's ability to pay). Here, even though such a showing would not be dispositive for a corporation, Duling has still not demonstrated that it is unable to pay the fines assessed against it. Duling submitted tax returns indicating that it operated at a loss in 2020. But this information alone is insufficient for us to conclude that Duling was unable to pay the fines. The record also indicates that Duling received a loan under the Paycheck Protection Program, and there is nothing in the record about what savings or assets Duling had. Duling had ample opportunities to provide additional documentation and deposition testimony to support its contention that it was unable to pay the fine and it did not do so. Accordingly, this factor does not weigh in favor of a finding of gross disproportionality.

## CONCLUSION

We conclude that Duling has failed to demonstrate that the fine levied against it is excessive and, accordingly, we affirm.

GLASGOW, J.

We concur:

CRUSER, C.J.

PRICE, J.

9